See also D.C., 266 F.Supp. 461.

**UNITED STATES of America**
v.
**Robert G. BAKER.**
**Crim. No. 39–66.**

United States District Court
District of Columbia.
Jan. 23, 1967.

William O. Bittman, Austin S. Mittler, Donald Page Moore, Dept. of Justice, Washington, D. C., for plaintiff.

Edward Bennett Williams and Peter R. Taft, Washington, D. C., and Boris Kostelanetz, New York City, the Bar of the Supreme Court of New York, admitted pro hac vice, for defendant.

## MEMORANDUM OPINION

GASCH, District Judge.

Defendant's motions to dismiss the indictment and to suppress certain portions of the testimony of the witness Bromley and certain recordings were filed on 11 January, 1967.[1] These motions are based on information delivered to counsel for the defendant as a result of this Court's memorandum opinion dated the 20th of December, 1966. In addition, the defendant seeks the production of various other materials.

These motions are predicated upon the defendant's contention that the Government, through the activities of Wayne Bromley, deprived him of his privilege against self-incrimination, due process of law, and his right to counsel under the Fifth and Sixth Amendments to the Constitution.

More specifically, the defendant contends his rights were violated by the Government's (1) recordation of a telephone conversation between the defendant and Wayne Bromley on the 25th of March, 1965, and (2) the electronic monitoring of a meeting between the defendant, Bromley, and Clifford Jones on March 26, 1965, at the Beverly Wilshire Hotel in Los Angeles, California. The defendant further alleges that the Government sent Bromley to the law offices of the defendant's attorneys on June 2, 1965, to elicit information concerning the defendant's activities. All of the above activities occurred at a time when the defendant was represented by retained counsel but prior to the return of the indictment.

Out of the presence of the jury and prior to hearing the testimony of Bromley, the defense was given the opportunity of a hearing in open Court on these motions. Bromley was called as a witness by the defense and testified, in substance, that he has known the defendant since 1944; that they met when both served as pages at the Capitol; and their close friendship has continued.

The defense elicited an admission from Bromley that he had testified falsely before the grand jury in that when asked to identify the secretary's initials to a certain letter signed by him, he had stated that he put the initials G.A. on the letter for the purpose of having it appear that he had a secretary, whereas he had typed the letter himself. He admitted that this was false but said he did it to protect the secretary who wrote the letter for him since he did not wish to involve her in the investigation. He subsequently admitted to the grand jury the true facts.

Counsel then brought out that there came a time when Bromley decided to cooperate fully with the Government and told the full story of what was involved. This, he said, was on the advice of his retained counsel, Mr. Mark Sandground.

Bromley was then called upon to explain the circumstances wherein he permitted an electronic device to monitor a telephone conversation which he had with the defendant Baker. The witness testified that the monitoring was suggested by his attorney and not by the Government. The witness then related the circumstances of this authorization as follows: He had received a call from the secretary of one Fred Black stating that one Clifford Jones of Las Vegas was trying to reach him. Thereafter he received a call from Jones. During the course of this conversation, which the witness described as "outlandish," he learned that Jones had testified before the grand jury and had denied knowledge of a transaction which involved the witness, the de-

---

1. The motions had been lodged with the Court on January 4, 1967, but pursuant to agreement of counsel, the motions were held by the Court until after the jury was selected.

fendant, and Jones. The purport of the Jones' conversation was to solicit agreement by Bromley to testify in harmony with the Jones' testimony. Shortly thereafter, Bromley called his attorney and sought his advice. The witness described his state of mind as "dumbfounded" and said he was apprehensive that Jones might have had the conversation monitored and because he, Bromley, had said very little, that Jones might subsequently seek to have it appear that Bromley had agreed to the Jones' proposal.

When these reasons were explained to Mr. Sandground, he said he would think the matter over and let Bromley know. Thereafter, he advised Bromley to put in a call to Jones and to have the call monitored by the Government. The purpose of this second call was to keep the record straight and to protect Bromley from any implication that he might have agreed to Jones' proposal, which was the denial that Jones had any information concerning the First Western Financial Corporation agreement between Jones, Bromley, and the defendant, which resulted in the payment by First Western to Baker of approximately $14,000 on invoices bearing Bromley's name, which would result in checks by First Western being made out to Bromley, which would then be cashed and the proceeds given to Baker.

During the monitored telephone conversation, they agreed upon the importance of meeting to discuss these matters among themselves and with the defendant Baker. Jones agreed to pay Bromley's expenses if such a meeting could be arranged.

Thereafter, on March 25, 1965, Bromley called Baker and arranged for the three of them to meet in Los Angeles, California. This call was also monitored.

The following day, March 26, 1965, the three men met in the Beverly Wilshire Hotel, and as a result of the advice of his counsel, Bromley consented to the placing on his person of an electronic transmitting device. The device malfunctioned and the recording of the conversation of this meeting, which the Government produced pursuant to the Court's order respecting the defense pretrial motion to produce under Rule 16(a), F.R.Crim.P., is fragmentary and of little evidentiary value.

Thereafter, the defense made a proffer of certain other statements by Bromley to various Federal investigative agents which were admittedly false. In summary, these false statements represented efforts by Bromley to protect the defendant, or at least to play down the significance and extent of certain dealings he had with the defendant. More particularly, the proffer concerned the receipt and division of a check from the Redwood National Bank; that Bromley had never had any business dealings with the defendant Baker and that Bromley owned no M.G.I.C. stock; that Bromley had no knowledge of Baker's financial or business dealings; that the only financial dealings Bromley had had with Baker was when he and his mother lent Baker $1,150 and that the money had been repaid. The defense emphasized that such statements by Bromley were knowingly false and that they might subject Bromley to prosecution. It was the defense's contention that it was Bromley's apprehension of prosecution that caused him to consent to the monitoring.

With respect to the motion to suppress the testimony of Bromley, the defense relies heavily upon the decision of this Court in United States v. Laughlin, 222 F.Supp. 264 (D.C.D.C.1963), wherein Judge Youngdahl concluded that the decision of Mrs. Gross, the Government witness, to permit her telephone to be monitored was coerced and not voluntary. From the excerpt of the conversation contained in Judge Youngdahl's opinion, the basis for this conclusion clearly appears. Mrs. Gross stated that she did not wish to consent; that only because of the extreme pressure exerted upon her both by the Assistant United States Attorney and the Deputy Foreman of the grand jury was her consent obtained.

Judge Youngdahl's opinion is in line with Weiss v. United States, 308 U.S.

321, 330, 60 S.Ct. 269, 84 L.Ed. 298 (1939), wherein certain illegally monitored telephone calls constituted the pressure which was exerted upon one of the parties to force him to become an informer, to turn state's evidence, and to consent to the divulgence of the intercepted message.

■ No such situation is involved in the motion before the Court. While it is apparent that the witness Bromley entertained some apprehension as to his previous efforts to protect his friend Baker by falsely denying knowledge of Baker's transactions in which he was involved, the prime and independent motivating force as a result of which the monitoring of these telephone calls and the placing on his person of a transmitting device was decided upon was the advice of his own counsel, given for the purpose of preventing any further involvement of an incriminating nature of Bromley.

Thus, it appears that the opinion of this Court in United States v. Zarkin, 250 F.Supp. 728 (D.C.D.C.1966), in which both *Weiss* and *Laughlin* are distinguished, is more clearly in point factually. As Judge Walsh found at page 737:

"However, so long as pressure is not initiated by the police for the purposes of overbearing the will of the party, this Court does not believe that the authorization given by the party is involuntary."

Here, because of the independent advice of Bromley's own counsel, the consent is more clearly voluntary than in *Zarkin.*

In support of the motion to dismiss, the defendant relies heavily on Jones v. United States, 119 U.S.App.D.C. 284, 342 F.2d 863 (1964), which he suggests establishes a Sixth Amendment right to counsel which adheres to a prospective defendant prior to either arrest or indictment once a grand jury undertakes an investigation of his activities. He then seeks to extend backward in point of time the principles set forth in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), by asserting that once the right to counsel is estab-

lished, all out-of-court statements or admissions of the defendant made in the presence of Bromley, a Government informant, must be excluded if obtained without his counsel's consent or presence.

In *Jones,* supra, the defendant Short was arrested in North Carolina and removed to the District of Columbia where he was for the first time afforded the opportunity of a preliminary hearing. Appointed counsel, after a brief discussion with the defendant, advised him to waive the hearing and he was returned to jail. This was the last time Short saw this attorney. Fifteen days later the defendant was taken before the grand jury where he was confronted with an incriminating statement which he had given the police in North Carolina at a time when he was without the benefit of counsel. He had not been taken before a magistrate as required by Rule 5, F.R.Crim.P., at the time of his arrest. Under these circumstances, four of the eleven judges of the *in banc* court, speaking through Judge Edgerton, felt that the defendant was entitled to the advice of counsel at the time he appeared before the grand jury, and that the denial of this right necessitated the dismissal of the indictment. The Court, however, remanded the case to the District Court to enable that Court to ascertain if there was sufficient additional evidence before the grand jury to support the indictment.

■ The language in Section IV of Judge Edgerton's opinion, on which the defendant relies, is not the holding of the *in banc* court on this point. This was made clear in the opening paragraph of the opinion. Even though Section IV is not the holding of the Court, it is, of course, entitled to respect.

However, this Court feels that *Jones,* on the facts, is clearly distinguishable from the instant case. The thrust of Section IV of the *Jones* opinion suggests that a prospective defendant has a right to counsel once he has been arrested or detained. The cases cited by Judge Edgerton in support of defendant Short's right to counsel in the *Jones* case involved defendants who had either been

detained, arrested, or indicted. As has been previously indicated, the defendant Short in *Jones* had been arrested and was held in jail for a period of over two weeks before he was first taken before the grand jury. Under Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), any defendant in similar circumstances would have an absolute right to counsel. In the present case, at the time of alleged interference with the defendant's right to counsel, he had neither been arrested nor detained in any way whatsoever.

The doctrine of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199 (1964), on which the defendant relies strongly, when that case is considered along with the doctrine of the *Jones* case, supra, does not, in the opinion of the Court, assist the defendant in these motions. There, the Government had persuaded the codefendant Colson, after he and Massiah had been indicted, to cooperate with the Government by permitting his automobile to be wired so that his conversations with Massiah could be recorded. As the Court reads that case, it precludes post-indictment efforts on the part of the Government to monitor the conversations between a cooperating codefendant and the defendant.

■■ It is clear, of course, that the defendant had the right to retain counsel at any time, particularly during the course of the grand jury investigation, but the fact that he had retained counsel does not preclude investigation by the Government by interrogation of the defendant's friends and associates. Cooperation with the Government by one in whom the defendant had confided does not vitiate the indictment or require suppression of the testimony of the witness. See Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

The defense seeks to avoid the reach of Hoffa by referring to the Supreme Court's discussion of Coplon v. United States, 89 U.S.App.D.C. 103, 114, 191 F.2d 749, 759 (1951), and Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953). In discussing these cases, the Court assumed that these cases were correctly decided and further assumed without deciding that had the Test Fleet trial resulted in a conviction, such a conviction would have "presumptively been set aside as constitutionally defective" due to the informer Partin's activities. This conclusion is in harmony with the result reached in *Massiah,* supra, since these conversations occurred after indictment and while the trial of the Test Fleet case was in progress.

The interference with the right of counsel also took place in *Coplon* and *Caldwell* after indictment and while the trial was in progress. Conversations between counsel and the accused were intercepted in *Coplon,* and in *Caldwell* the informer was actively purporting to assist defense counsel and sitting in on conferences with the defendant during the course of the trial. Contemporaneously, he was informing the Government.

Here, there is no showing that Bromley ever participated in conferences between the defendant and counsel or that after the indictment he had any contact with the defendant which was disclosed to the Government.

Bromley's pre-indictment visit to the office of defense counsel was, according to Bromley, suggested by the defendant Baker. There is no showing that Bromley ever related anything that took place during this conference to Government counsel, nor was it shown that Baker was present during the course of this conference.

In view of the foregoing, defendant's motions to dismiss and to suppress are denied.

Finally, with respect to the defendant's motion for production, where these requests have not been rendered moot by production of the material sought and the intervening hearing, the Court finds they are without merit and, accordingly, this motion will be denied.