**UNITED STATES of America**

v.

**Robert G. BAKER.**

**Cr. No. 39–66.**

United States District Court
District of Columbia.

May 29, 1969.

See also D.C., 301 F.Supp. 973.

Theodore G. Gilinski, Dept. of Justice, Washington, D. C., for the United States.

Edward Bennett Williams, and Michael Tigar, Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

Defendant Baker has moved this Court for a new trial based on newly discovered evidence. He offers as new evidence the suggestion that testimony before another judge in a subsequent trial involving Clifford Jones on charges of perjury indicates that this Court might have been unconsciously misled as to the admissibility of certain testimony in Mr. Baker's case.[1] He then argues that this new evidence is material and requires the granting of a new trial because it brings the facts within the principles set forth in the *Laughlin*[2] case and under the theory of that part

---

1. United States v. Jones, 292 F.Supp. 1001 (D.D.C. September 30, 1968).

2. United States v. Laughlin, 222 F.Supp. 264, 223 F.Supp. 623 (D.D.C.1963).

of *Katz*[3] which is unaffected by *Desist*[4] (as represented in the *White* decision).[5] The matter was briefed and argued in open Court. Defendant was granted permission to introduce into evidence transcripts of testimony from the case of United States v. Jones.[6] Upon consideration of the briefs, argument, record and exhibits, the Court finds the proffered new evidence to be neither new, nor material and accordingly will deny defendant's motion.[7]

Defendant's position is that Wayne Bromley, a Government witness in this case, did not consent to have his phone conversations with Clifford Jones monitored by the Government. On the contrary, defendant argues, Bromley was coerced by the Government into taking this action and accordingly, the conversations and their fruits should have been suppressed.[8]

During the trial of this case, Mr. Bromley appeared as a witness for the Government and testified that after consulting with his attorney, Mr. Mark Sandground, he decided to cooperate to the extent of requesting the Government to monitor a telephone conversation between him and Clifford Jones. The conversation itself had little or no materiality to the issues in the Baker case. It led, however, to a meeting in the Beverly Wilshire Hotel in Los Angeles between the defendant Baker, Clifford Jones, and Wayne Bromley in March, 1965. On this occasion, Bromley wore an electronic device, placed on him by the Government for the purpose of transmitting conversations within its range to an outside point where they were to have been recorded by the Government. The device malfunctioned and as a result, the recordings were of little or no value.

First, no evidence has been brought to this Court's attention which may in any realistic sense be considered new: at best it is cumulative; in part it is irrelevant; most of it is consistent with that which was presented earlier. Defendant cites several portions of the later testimony but in each instance it is for the purpose of arguing that the circumstances surrounding Bromley's consenting to have his phone monitored were *more* coercive than this Court originally understood.[9] This evidence was in substance either presented to this Court earlier or was implied in that primary information which was presented or is irrelevant to the earlier proceeding.[10] The testimony now referred to is not new.

■ The main contention of the defense is that only after extensive inquiry during the course of the hearing on the pretrial motions in United States v. Jones [11] did it learn that Bromley's attorney, Mark Sandground, was subjected to intensive pressure by the Government as a result of which he agreed to cooperate and that because of this pressure his cooperation was coerced and therefore involuntary. The Government points out that Sandground could have been called as a witness by the defense in the Baker case and that such action would have disclosed whether or not Sandground would have refused to answer because of the confidential relationship between attorney and client. In the absence of such showing, it cannot be presumed that Sandground's testimony would have been unavailable to the de-

---

3. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

4. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (March 24, 1969).

5. United States v. White, 405 F.2d 838 (7th Cir. 1969).

6. *Jones, supra,* note 1.

7. Kyle v. United States, 297 F.2d 507, 514 (2d Cir. 1961).

8. United States v. Laughlin, *supra,* note 2.

9. But, *compare* Jones Tr. 13–24; 52, 57, 68, 113–14; 300, 301; 344–50; 444–51; *with* Baker Tr. 1130–1131; 31–32. *See* United States v. Baker, 266 F.Supp. 456, 458–459 (D.D.C.1967).

10. *Compare* Baker Tr. '31–32, 1128–29, 1131, 1134, 1193; *with* Jones Tr. 198, 299–300, 334; 478; Jones Tr. 39; 336–50; Jones Tr. 28–29; 451–52; 448–449; 1129; 1146–47.

11. *Supra,* note 1.

fense. The Government also points out that Government counsel adhere to the position previously taken, namely, that there was extensive discussion between them and Sandground as a result of which Sandground in attempting to find out the factual situation with which his client Bromley was confronted did learn much of the Government's evidence, as a result of which he acted in what he considered to be the best interests of his client, offering to have his client cooperate with the Government in the hope that his client would not be indicted. Sandground's subsequent testimony is not in conflict with this position. No promises were made and the fact that cooperation was forthcoming does not make Bromley's action involuntary or bring it within the scope of Judge Youngdahl's opinion in the *Laughlin* case.[12]

That case held that an uncounseled witness could be coerced by circumstances including threats of prosecution into involuntarily aiding the Government. It did not hold that in every situation in which a potential witness might be prosecuted, that witness' awareness of the facts would vitiate his consent. In the instant case, significantly, Bromley is an attorney and was at all times represented by experienced counsel who was a former prosecutor. They made a reasoned decision in light of all the circumstances, that Bromley's best interests would be served by cooperating. There is no indication that Bromley showed any reluctance in reaching that decision, or any regret in having made it.[13]

■ Second, counsel takes the position that these conversations were material and likely to affect the outcome since they were utilized to refresh Bromley's recollection before he testified before the Grand Jury and further that Government counsel utilized Bromley's Grand Jury testimony to refresh his recollection concerning his testimony during the trial. Whatever may have been the importance of the Jones-Bromley telephone conversations in the *Jones* case,[14] (it should be noted that those conversations involve the essential issue of corroboration required in a perjury case), here, they were of negligible value and of no evidentiary significance. The phone conversation did lead to the subsequent meeting at the Beverly Wilshire Hotel. But the tap on the conversation did not have any causal connection with the subsequent meeting.[15] The malfunctioning of the electronic device reduced the recording of the conversations to little or no significance. It seems highly questionable to the Court that this fragmentary recording on a malfunctioning electronic device is of any significance compared with the recollection of the witness Bromley himself which was the subject of his Grand Jury testimony shortly thereafter.

■ In view of the opinion of the Supreme Court in *Desist*,[16] limiting *Katz*[17] to prospective application only, we must look to the state of the law at the time these events happened in the Beverly Wilshire Hotel in 1965. It seems that Baker took the risk of his meeting on that occasion with Bromley and having taken the risk is in no position today to demand a new trial because of his lack of knowledge that Bromley was cooperating with the Government.[18]

12. *Supra*, note 2.

13. Baker Tr. 1130–1131.

14. *Supra*, note 1.

15. Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939). See Baker Tr. at 31–32.

16. *Supra*, note 4.

17. *Supra*, note 3.

18. Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966); Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Defendant also suggests that if information which was developed in the *Jones case* demonstrates that Bromley did not in fact consent to the monitoring, the Government has violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This suggestion is not supported by the record.