502 A.2d 1375

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Sherman Ross CLARK.**

Superior Court of Pennsylvania.

Argued March 11, 1985.

Decided Nov. 1, 1985.

Reargument Denied Jan. 13, 1986.

256

Frank J. Scutella, Assistant District Attorney, Erie, for Commonwealth, appellant.

John Garhart, Erie, for appellee.

Before DEL SOLE, HESTER and FEENEY *, JJ.

DEL SOLE, Judge:

This case involves an appeal by the Commonwealth from a pretrial order which suppressed the electronically recorded statements of Appellee, Sherman Clark. The Commonwealth sought to introduce conversations made between Sherman Clark, and Commonwealth informant, Richard McCullough. The trial court suppressed the recordings, reasoning that McCullough had not given his voluntary consent to the monitoring of his conversations. Also suppressed were the contents of a January 9, 1983, conversation between Sherman Clark and State Trooper C.B. Lewis. Suppression of this conversation was ordered because the District Attorney failed to comply with the review and authorization requirements of the Wiretapping and Electronic Surveillance Control Act of 1978, 18 Pa.C.S.A. § 5701, *et seq.* (the Act). Since we agree with the trial court, that McCullough's voluntary consent was lacking, we affirm the decision to suppress Appellee's statements made

* Judge John M. Feeney, of the Court of Common Pleas of Allegheny County, Pennsylvania, is sitting by designation.

to Mr. McCullough. However, because we find that the trial court incorrectly interpreted the requirements imposed under the Act, we reverse that part of the Order which suppressed Appellee's January 9, 1983 conversation with the state trooper.

Initially, Appellee complains that the Suppression Order is not appealable by the Commonwealth. In its Brief, the Commonwealth avers that the prosecution of its case will be substantially handicapped by the Suppression Order. Accordingly, this appeal is properly before us. *See: Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

We now turn to the facts of this case which can be briefly summarized as follows: On or about May 16, 1982, Appellee was charged with criminal conspiracy to commit insurance fraud, and other offenses involving stolen vehicles. Prior to that time, and during the course of their investigation of Appellee, the state police had made use of electronic surveillance techniques. Richard McCullough was the Commonwealth's agent for this surveillance.

Mr. McCullough's involvement in this case came about when he was arrested on charges dealing with the removal or falsification of motor vehicle identification numbers, and with receiving stolen property. Shortly thereafter, negotiations between McCullough, his attorney, and Assistant District Attorney Michael Cauley began. As a result of those discussions an agreement was reached. In return for McCullough's cooperation with the Commonwealth in their investigation of persons dealing in stolen vehicles, the charges against McCullough would be dropped for "lack of evidence". The agreement also provided that the charges would be refiled if McCullough failed to cooperate fully with the authorities. Under the agreement, McCullough was to be granted full immunity for any other uncharged violations to which he confessed. On October 15, 1982, McCullough provided the Pennsylvania State Police with a thirty page statement. In this statement McCullough admitted his guilt to the then pending charges, and detailed his and other's involvement in the movement of stolen

vehicles. Thereafter, as agreed, the charges against McCullough were dismissed. Sometime during the next few days it was decided by the District Attorney's Office and the state police to begin an undercover operation using electronic surveillance. On October 19, 1982, McCullough was asked to consent to having his telephone conversation monitored, and/or to wearing a body transmitter. McCullough agreed, and signed a consent form. Further consent forms covering periods of approximately twenty days were obtained from McCullough. The surveillance lasted from October 1982 through at least February of 1983. During the course of this surveillance conversations between McCullough and Appellee were recorded.

Statements made by Appellee were also intercepted on January 8 and 9, 1983. these statements were made in a conversation between Appellee and Trooper C.B. Lewis, who was outfitted with a body recorder. The trial court suppressed statements made in the January 9th conversation between Appellee and the trooper.

The Commonwealth in its Brief, and the Pennsylvania District Attorney's Association in its Brief as *Amicus Curiae*, first argue that McCullough's consent was voluntary.[1]

The relevant statutory provision is found in 18 Pa.C.S.A. § 5704(2)(ii), which permits interceptions where:

(ii) one of the parties to the communication has given prior *consent* to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the intercep-

---

1. The Commonwealth and *Amicus Curiae* also argue that the trial court erred in suppressing the statements made by Appellee to McCullough for the additional reasons stated by the trial court in its Opinion. Since we agree with the trial court that the informant's consent was not obtained voluntarily, and the statements must be suppressed for that reason, we will not address the Commonwealth's further claims of error as they pertain to the Appellee-McCullough recordings.

tion is to be made, has reviewed the facts and is satisfied that the *consent is voluntary* and has given prior approval for the interception; ... (Emphasis Added)

■ The Act requires one party's prior consent, and a finding that the consent was voluntary. The Appellate courts of this Commonwealth have not defined the term "voluntary consent" as it relates to the Act. However, many reported decisions have considered what constitutes voluntary consent in interpreting an analogous federal statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.S. §§ 2510–2520.

It has been stated that it is not a simple task to determine whether a person's consent to the recording of a phone conversation was voluntary. Further, such a determination must be made from the totality of the circumstances.[2] If it is found that the party agreeing to the wiretap did so consciously, freely, and independently, and not as the result of a coercive overbearing of his will, his consent will be considered voluntary. *United States v. Kelly,* 708 F.2d 121, 125 (3d Cir.1983), *citing: Culombe v. Connecticut,* 367 U.S. 568, 604–605, 81 S.Ct. 1860, 1880–81, 6 L.Ed.2d 1037 (1961) (opinion of Frankfurter, J.); *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *United States v. Sanford,* 673 F.2d 1070, 1072 (9th Cir.1982); *United States v. Brandon,* 633 F.2d 773, 776 (9th Cir.1980). On the other hand, a person's consent is not rendered involuntary because his cooperation has been obtained in return for a promise of lenient treatment, or because the motivations for it were altruistic or self-seeking. *United States v. Acavino,* 467 F.Supp. 284, 287 (3d Cir.1979); *United States v. Osser,* 483 F.2d 727, 730 (3d Cir.1973).

2. Under the facts and circumstances of this case, the trial court found that McCullough's consent was not voluntary. While we understand our colleague Judge Hester's views, we nevertheless find that the trial court's determination is amply supported by the record. The function of an appellate court is not to substitute its judgment for that of the trial court, but to determine if that court's findings are supported by the record. *See: United States v. Brandon,* 633 F.2d 773 (9th Cir. 1980).

The Commonwealth maintains that McCullough was not coerced into giving his consent. Citing *United States v. Brandon*, 633 F.2d 773 (9th Cir.1980) the Commonwealth claims that McCullough agreed to cooperate following a candid description of his predicament, and the manner in which he might benefit himself. In its Brief, the Commonwealth states, "Further the informant realized that if he did not cooperate, the worst that would occur would be that he would be put back to square one with the charges brought against him with all the legal rights and remedies that any individual would have should they be charged with a criminal offense. There was really no penalty for his failure to cooperate with the Commonwealth only a benefit if he chose to do so".

We disagree. The facts show that an agreement was reached between McCullough and the authorities whereby the charges against McCullough would be dropped in turn for his cooperation. McCullough's failure to cooperate would result in the reinstitution of the charges. This agreement did not contemplate the use of electronic surveillance. In order to fulfill his part of the bargain, McCullough gave a statement admitting guilt. Subsequent to supplying his written admission, McCullough was given the choice of whether or not to participate in the electronic surveillance. It was only after McCullough admitted his guilt that he was presented with this "choice". If McCullough failed to cooperate he would not be placed back to "square one" as the Commonwealth suggests. Although the same charges would be brought, this time the state police would have in their possession McCullough's written admission of guilt to the charges. McCullough had no viable alternative but to cooperate, and give his consent.

This is not the case where the police were merely pointing out the informant's situation, and thereby obtaining his consent. Nor, is it a case where the informant consented in hopes of lenient treatment. Rather, in this case, McCullough's consent came about following an unfair bargain. The police never explained to McCullough the extent of

"cooperation" which would be necessary before he could be assured that the original charges brought against him would not be reinstituted. McCullough was never informed that his further cooperation would be requested when he gave the police information about his and others illegal activities. The following question by Appellee's counsel, and the response given by McCullough describes the situation facing McCullough when he was asked to give his "voluntary consent":

Q. Sir, the essence of it is is that when you allowed these telephone conversations between my client and yourself to be recorded, you did so because you had no choice. You knew that if you didn't, the deal would go out the window and you would be prosecuted. Now, isn't that a true statement?

A. Yes.

The following exchange also occurred:

Q. (BY MR. AMBROSE) So, in essence Mr. McCullough, if you refused to do what Trooper Anderson asked you to do in relation to the recording of telephone calls and the signing of consents, the charges would be revived as you've already testified and the bottom line at that point in time was that you had no choice; they had you over a barrel; isn't that true.

MR. SCUTELLA: Objection, you Honor. It calls for a conclusion on that part of the witness. That's the matter before the Court, whether, whether or not he had a choice.

MR. AMBROSE: Your Honor, his state of mind is relevant.

THE COURT: Overruled.

Q. (BY MR. AMBROSE) Isn't that true, sir?

A. That's true.

Viewing all of the circumstances surrounding McCullough's decision to cooperate in taping the conversation, we find that his consent was not voluntary. McCullough was subject to pressure which had effect of overbearing his will, thereby rendering his consent coerced. Consent to a wire-

tap is not voluntary where it is coerced, either by explicit or implicit means or by implied threat or covert force. *United States v. Kelly*, 708 F.2d 121, 125 (3rd Cir.1983), *citing Schneckloth v. Bustomonte*, 412 U.S. 218, 228, 93 S.Ct. 2041, 2048, 36 L.Ed. 854 (1973); *United States v. Osser*, 483 F.2d 727, 730 (3rd Cir.), *cert. denied*, 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321 (1973). We conclude that the trial court properly ruled the recorded conversation between Appellee and McCullough inadmissable.

■ The Commonwealth next challenges that portion of the trial court Order which suppressed the contents of a January 9, 1983 recorded conversation between Trooper C.B. Lewis and Appellee. The trial court held that on that date the district attorney's office failed to comply with the factual review and authorization requirement of the Act, which can be found in 18 Pa.C.S.A. § 5704(2)(ii). The Commonwealth argues that these requirements did not apply in this factual situation since it was governed by 18 Pa.C.S.A. § 5704(2)(i). The Appellee contends that the requirements apply to both § 5704(2)(i) and § 5704(2)(ii). We agree with the position taken by the Commonwealth, and find that the factual review and authorization requirements found in § 5704(2)(ii) apply only to the type of interception described in § 5704(2)(ii). Section 5704(2)(i) and (ii) provide:

**§ 5704. Exceptions to prohibition on interception and disclosure of communications**

It shall not be unlawful under this chapter for ...

(2) Any investigation or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

(i) such officer or person is a party to the communication; or

(ii) one of the parties to the communication has given prior consent to such an interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general

designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom.

The statute speaks of two distinct situations. The first is covered under (2)(i), and relates to an incident where a law enforcement officer is a party to the communications. Such was the case here, where a state trooper was one of the parties. The statute also provides an alternate exception to the prohibition against intercepting communication. This situation is dealt with in (2)(ii), and refers to an interception undertaken with one of the parties' consent. In such a circumstance, the statute mandates that certain conditions be met which relate to authorization, review and record keeping. A plain reading of the provisions leads us to conclude that these conditions apply only to (2)(ii). The requirements speak, among other things, to a determination that the consent is voluntary. The issue of consent is only treated in (2)(ii). Further, (2)(i) and (2)(ii) clearly cover separate situations, as indicated by the use of the disjunctive word "or". Therefore, reference in (2)(ii) to "this paragraph" is reference to the terms set forth in (2)(ii).

We find that the conversation intercepted between Appellee and State Trooper Lewis was covered under 18 Pa.C. S.A. § 5704(2)(i), and therefore, the requirements imposed by 5704(2)(ii) did not apply. The Commonwealth fully complied with the provisions of (2)(i) since it was established by the trial court that "an investigative or law enforcement officer" was a "party" to the communications. According-

ly, we reverse that part of the trial court's Order which suppressed the statements made by Appellee to Trooper C.B. Lewis on January 9, 1983.

Order affirmed in part, reversed in part.

HESTER, J., files a concurring and dissenting opinion.

HESTER, Judge, concurring and dissenting:

I agree that appellee's conversation of January 9, 1983, recorded by Trooper C.B. Lewis, should not have been suppressed and join in the portion of the majority opinion which discusses that matter.

I disagree that McCullough's consent to the wiretapping operation was involuntary. My disagreement is not with the majority's statement of the law, but in applying the law to the facts set forth in the record. I believe McCullough's consent was not only voluntary, but eager, and would hold that the intercepted conversations should be admissible against appellant at his trial. I therefore respectfully dissent.

As the majority states, the wiretap was voluntary if McCullough consented consciously, freely and independently and not as a result of a coercive overbearing of his will. *United States v. Kelly*, 708 F.2d 121, 125 (1983). Consent to a wiretap is not voluntary if it is coerced, either by explicit or implicit means or by implied threat or covert force. *Id., citing Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 863 (1973). A consent otherwise voluntary is not vitiated due to self-seeking motives or expectations of personal benefit. *Id., citing United States v. Moskow*, 588 F.2d 882, 891 (3d Cir.1978); *United States v. Osser*, 483 F.2d 727, 730 (3d Cir.1973). Voluntariness is a question of fact to be determined from the totality of the circumstances. *Id., citing Schneckloth, supra*, 412 U.S. at 227, 93 S.Ct. at 2047, 36 L.Ed.2d at 863.

Applying the foregoing law, the majority opinion concludes that McCullough's will was overborne by the thirty-page confession he had given prior to the request for

wiretapping. It assumes that McCullough's agreement to cooperate "did not contemplate the use of electronic surveillance," and that it was "an unfair bargain."

Based on extensive review of the record, I disagree with the conclusion and the assumptions. In October of 1982, the Pennsylvania State Police filed a warrant against McCullough charging him with receiving stolen property and removing or falsifying vehicle identification numbers. Shortly thereafter, McCullough's attorney, Dennis Williams, contacted the District Attorney's office and initiated the negotiations that resulted in all charges against McCullough being dismissed for lack of evidence in return for his cooperating with the authorities. When McCullough made the agreement, he certainly did not think it was unfair. He was very happy to trade his cooperation for dismissal of the charges against him. Exactly what the agreement contemplated is admittedly vague because it explicitly required only McCullough's continued cooperation, but it is an overstatement to say it "did not contemplate the use of electronic surveillance." A few days after the agreement when the police asked McCullough to begin wiretapping, he did not respond by saying the request was beyond the scope of his agreement.

On the contrary, he thought at the time it was exactly the sort of cooperation the agreement included. This is substantiated by numerous exchanges which occurred during the lengthy examination and cross examination of this witness.

For instance, on direct examination, McCullough was asked about signing the consent forms and answered, "I did it voluntarily." Appendix at 493. He was then asked by Assistant District Attorney Scutella:

Q  Now when you say you did this voluntarily, these—when you had these communications intercepted voluntarily, can you explain that to the Court what you mean by that?

A  It's something that I wanted to do. I had no charges hanging over my head at that time.

Q  You say you wanted to do it?

A  Yeah.

Q  Would you rather not have done it?

. . . .

A  It's something that I wanted to do.

Q  I understand that it's something that you wanted to do, but would you rather not have done it?

A  Yes, I would rather have not done it.

. . . .

Q  By you saying that you would have rather not done it, how did you come to the fact that you did do it then?

A  I did it because it's something that I wanted to do. Not wanting to do it is, to me, is just like not wanting to go to work.  You got to go.

Q  All right, but there had to come a time in your mind when you made a decision either to do it or not to do it;  is that correct?

A  I made a decision along with in the presence of [my attorney] Dennis Williams that I wanted to do this.

*Id.* at 493–95.  The colloquy illustrates the conflicting language McCullough used to describe his state of mind.  He "wanted to do it," even though he would "rather not have done it," like not wanting to go to work but recognizing that he had to go.  McCullough's final answer is significant in that his attorney was never present when he signed a consent form, but had been present when he made the original agreement to cooperate.  *Id.* at 529.

Subsequently, during cross-examination by Mr. Ambrose, appellee's counsel, it was suggested that McCullough had to do things the police told him to do even if he didn't want to do them, and McCullough answered, "I did what I felt was right."  *Id.* at 501.  Mr. Ambrose continued:

Q  The question, sir, was this: you testified that after the arrangement was made, you would have to do things that the state police told you to do, correct?

A  That's correct.

Q  And you would have to do some of these things whether you wanted to do them or not, true?

A  That's true.

Q  Okay.

A  But I wanted to do those things.

Q  You wanted to do those things. That's what you're saying today?

A  There's things I had to do. I'd get up at four o'clock in the morning to go meet someone. It's something I didn't want to do, but I wanted to meet that person. There is a difference.

Q  Well, sir, in order to get the benefits that were given to you, you've agreed you had to do certain things, and some of the things that you had to do you might not want to have done but they were done under the direction of Trooper Anderson; is that correct?

A  If you could name those things, I could probably agree.

Q  I'm going to name—I'm going to be very specific. One of the things after you cut your deal, one of the things you had to do was agree to allow telephone conversations between yourself and Mr. Manta and Mr. Clark and Mr. Wintrode to be recorded; isn't that true?

A  That's something I wanted to do, yes.

*Id.* at 501–02. Later in his cross-examination, Mr. Ambrose asked:

Q  Right, and you kind of got to the point—at least by the beginning of December—you really didn't want to sign anymore of these forms; isn't that true?

A  No. The investigation got quite involved where it was quite pertinent that I keep signing these.

Q  You are saying you wanted to do this?

A  Yes.

*Id.* at 530. Later, Mr. Ambrose asked:

Q  So, you feared repercussions from the state police, didn't you, that if there wasn't enough performance

on your part, that they would come back on you, true?

A  I just did what I agreed to do.

*Id.* at 535.

Similar statements are contained throughout the extensive testimony of McCullough at appellant's pre-trial suppression hearing. On cross-examination he said he "felt it was the right thing to do" when approached about electronic surveillance. *Id.* at 537–38. He testified that during the period covered by the consent forms, the police were not holding anything over his head. *Id.* at 540.

In explaining an earlier statement that the wiretaps were against his "best wishes," McCullough said, "It wouldn't be anybody's best wishes to have their telephone tapped." *Id.* at 547–48. He further explained, "At the particular time that they were recorded, it was my best wishes that they be recorded so I could get out of the situation that I am [*sic*] in.... I weighed out all the possibilities, and it was to my best interests that's what I should do." *Id.* at 618.

It was in the midst of McCullough's extensive testimony that the leading questions quoted in the majority opinion were asked and answered. The transcript simply does not convey to me the impression that McCullough was subject to coercive tactics which had the effect of overbearing his will. McCullough testified that it was only a "possibility" that he would be prosecuted if he did not consent to wiretapping, *id.* at 535, and that he was never threatened with prosecution if he did not continue to cooperate, *id.* at 605–06.

I consider three other facts to be important. First, I think it is significant that McCullough's cooperation was initiated by McCullough, not by the district attorney or by the police. Second, his cooperation was initiated on the advice of and in the presence of his attorney. Finally, the pattern established by McCullough's fifteen signed consent forms and his continuous participation in the wiretapping over a period of several months indicates that he was doing

so voluntarily. He indicated that even after he felt safe from repercussions from the police, he continued to cooperate. *Id.* at 535.

Even though McCullough's confession was a factor in his consent to the wiretap investigation, an examination of all the circumstances leads me to conclude that his consent was voluntary. I would therefore reverse the order suppressing the tapes of McCullough's conversations with appellee and would permit the Commonwealth to introduce them at appellee's trial.