533 A.2d 1376

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Sherman Ross CLARK, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1987.

Decided Dec. 7, 1987.

Reargument Denied Feb. 2, 1988.

600

Michael J. Veshecco, Dist. Atty., Frank J. Scutella, Asst. Dist. Atty., Erie, for appellant.

Philip B. Friedman, Ambrose and Friedman, Leonard G. Ambrose, III, Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS,. JJ.

OPINION

NIX, Chief Justice.

The Commonwealth of Pennsylvania appeals, by allowance, the affirmance by the Superior Court of a pre-trial order entered by the Court of Common Pleas suppressing certain evidence obtained from a wiretap of intercepted telephone conversations. We granted review to consider a question of first impression in this Court. The issue to be addressed is whether the possibility of the refiling of criminal charges against an individual forecloses the individual's ability to voluntarily consent to a request by law enforcement authorities for a wiretap interception made pursuant to section 5704 of the Wiretapping and Electronic Surveillance Control Act of 1978, 18 Pa. C.S. § 5701 *et seq.* ("Act").

The pertinent facts in this appeal are as follows. On May 16, 1983, appellee Sherman Ross Clark was charged with criminal conspiracy to commit insurance fraud, criminal solicitation and various other offenses concerning stolen vehicles. The evidence to support these charges was substantially obtained through the cooperation of Richard McCullogh with the Pennsylvania State Police and the Erie County District Attorney.

Richard McCullogh was charged in October 1982 with receiving stolen property and receiving or falsifying vehicle registration numbers. Shortly thereafter, McCullogh and his attorney negotiated an agreement with the Erie County District Attorney, pursuant to which pending charges against McCullogh would be dropped in exchange for McCullogh providing information and cooperation to the Commonwealth which would lead to the apprehension of individuals who were dealing in stolen vehicles. The agreement further provided that McCullogh would not be charged for any other offenses to which he confessed; however, the agreement permitted the refiling of charges in the event McCullogh failed to fully cooperate with the authorities.

On October 15, 1982, McCullogh provided the State Police with a lengthy statement admitting his guilt as to the

pending charges and describing his and others' involvement in various activities relating to stolen vehicles. The charges against McCullogh were, thereafter, promptly dismissed.[1] On October 19, 1982, McCullogh was requested by Assistant District Attorney Michael Cauley to consent to having his telephone conversations monitored and to wearing a body transmitter, both for the purpose of his assisting in an undercover operation relating to the stolen vehicles activities which McCullogh had earlier described.[2] McCullogh agreed to participate in the electronic surveillance and wiretaps, and executed fifteen consent forms to this effect during the course of the undercover activities. Several conversations between McCullogh and Clark were recorded during this period, and in due course, appellee was charged with various offenses relating to stolen vehicles.

Appellee filed an omnibus pre-trial motion seeking suppression of the electronically recorded statements, alleging, *inter alia*, that McCullogh's consent was not given voluntarily, and thus, the essential criterion for a one-party authorization as set forth in section 5704(2)(ii) of the Act was not satisfied.[3] The trial court agreed with appellee's argument to this effect, and suppressed all statements made by Sherman Ross Clark which were electronically recorded via Richard McCullogh. The order of the suppression court was appealed by the Commonwealth. The Supe-

1. The record reveals that, pursuant to the insistence of McCullogh's counsel, the charges were dismissed for "lack of evidence."

2. Pursuant to sections 5704(2)(ii) and 5714(a) of the Act, Assistant District Attorneys Cauley and Scutella were designated for this surveillance operation by the Erie County District Attorney to give prior approval to the interception, determine that the consent was voluntary, and comply with other technical provisions thereunder.

3. Appellee also argued, among other things, that the blanket consent obtained by the Assistant District Attorney from McCullogh was statutorily impermissible; that the Assistant District Attorney did not sufficiently review the facts prior to authorizing the use of a wire or oral transcript, and various other technical violations of section 5714(a) of the Act. The suppression court found instances of noncompliance with provisions of the Act on these technical bases. The Superior Court, however, confined its review to the issue of voluntariness. *See Commonwealth v. Clark,* 349 Pa.Super. at 259 n. 1, 502 A.2d at 1377 n. 1, and the instant appeal is, likewise, so limited.

rior Court, in affirming the lower court's holding on this point, reasoned that because McCullogh's assistance for the wiretap and surveillance operation was solicited *after* he provided a statement admitting guilt, McCullogh essentially was given no real choice as regards his participation in the electronic surveillance. According to the Superior Court, McCullogh, aware both of the District Attorney's prerogative pursuant to their agreement to refile charges and the inculpatory statement he had recently offered, "had no viable alternative but to cooperate, and give his consent." *Commonwealth v. Clark*, 349 Pa.Super. 255, 261, 502 A.2d 1375, 1378 (1985). Thus, because the Superior Court found McCullogh's consent to the surveillance to have been given involuntarily, Clark's statements to him were deemed to have been unlawfully intercepted.[4] The Commonwealth appeals the order of the Superior Court. We reverse.

■ Ordinarily, any deficiency in an agreement entered into between law enforcement authorities and an individual may not be asserted by one who is not a party to that understanding. However, Clark's standing to question the voluntariness of McCullogh's consent, and thus, to challenge the lawfulness of the interception, is statutorily authorized. Section 5721 of the Act provides in pertinent part:

(a) **Motion to suppress.**—Any aggrieved person in any trial, hearing, or other adversary proceeding in or before any court or other authority of this Commonwealth may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on any of the following grounds:

(1) The communication was unlawfully intercepted....[5]

18 Pa.C.S. § 5721(a)(1).

**4.** Additionally, the trial court granted suppression of the statements made by Clark to State Trooper C.B. Lewis. This ruling was reversed by the Superior Court and is not presently before us in this appeal.

**5.** Clark's status as an aggrieved person is provided by section 5702 of the Act. An "aggrieved person" is defined thereunder as "a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed."

The Act enumerates several exceptions to the general prohibition against the interception and disclosure of wire and oral communications. The pertinent exception in this appeal is § 5704(2)(ii), which provides as follows:

It shall not be unlawful under this chapter for:

. . . .

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

. . . .

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is *voluntary* and has given prior approval for the interception. (Emphasis added)

18 Pa.C.S. § 5704(2)(ii).

Thus, the lawfulness of the interception and the subsequent admissibility at Clark's trial of the statements he made to McCullogh are dependent upon whether McCullogh, a party to the conversation, voluntarily consented to the interception. The question of what constitutes voluntary consent under the Act, or alternatively, what circumstances would vitiate voluntariness under the Act are issues of first impression in this Court.

We have identified several useful avenues for guidance in this definitional pursuit: cases interpreting the federal analogue to section 5704(2)(ii), section 2511(2)(c) of Title III of the Omnibus Crime Control and Safe Streets Act of 1968,[6] and decisions of the United States Supreme Court and of

6. 18 U.S.C. §§ 2510–2521.

this Court which address voluntariness in the consent exception under Fourth Amendment search and seizure analysis, and in the confession context. It should be self-evident that consent must be given voluntarily in order for the first two types of governmental actions posited here to be lawful. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968); *Commonwealth v. Hubbard,* 472 Pa. 259, 274, 372 A.2d 687, 694 (1977); *Commonwealth v. Mamon,* 449 Pa. 249, 255, 297 A.2d 471, 475 (1972). The same is true with regard to confessions. A confession is admissible only when it is made voluntarily, a requirement which is satisfied when the confession is the " 'product of an essentially free and unconstrained choice by its maker. . . . His will [must not have] been overborne and his capacity for self-determination critically impaired.' " *Commonwealth v. Smith,* 470 Pa. 220, 225, 368 A.2d 272, 275 (1977), *quoting Commonwealth v. Alston,* 456 Pa. 128, 133, 317 A.2d 241, 243 (1974). *See also Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); *Commonwealth v. Whitney,* 511 Pa. 232, 512 A.2d 1152 (1986). However, determining whether the voluntariness requirement has been satisfied in a particular case entails a factual inquiry, which must be determined by the court "from the totality of the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973); *United States v. Kelly,* 708 F.2d 121, 125 (3d Cir.1983), *cert. denied,* 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983); *Commonwealth v. Hubbard, supra,* 472 Pa. at 275, 372 A.2d at 694.

It is recognized that consent is not voluntary where it is the product of coercion or duress, either expressed or implied. *Schneckloth v. Bustamonte, supra,* 412 U.S. at 227, 93 S.Ct. at 2047; *United States v. Kelly, supra,* 708 F.2d at 125; *Commonwealth v. Harris,* 429 Pa. 215, 219, 239 A.2d 290, 293 (1968); *Commonwealth v. Hubbard, supra,* 472 Pa. at 275, 372 A.2d at 694; *Commonwealth v. Mamon, supra,* 449 Pa. at 256, 297 A.2d at 495. Thus, the courts must determine in a particular case whether the consent given was so tainted as to render the action invol-

untary and thus require the suppression of the proferred evidence.

◼ While an inducement based upon threats or promises of illegitimate action would vitiate voluntariness, *United States v. Kolodziej*, 706 F.2d 590, 594 (5th Cir.1983), a decision to consent is not rendered involuntary merely because it is induced by a desire to avoid the possibility of a well-founded prosecution. As the court stated in *United States v. Horton*, 601 F.2d 319 (7th Cir.1979), *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979):

> The fact of the possibility of penalties, whether or not they could actually have been visited if cooperation had not occurred, is a preexisting condition at the time the decision to cooperate is made. That which motivates the cooperation is the desire to change in a favorable manner the previously existing possibility, if not probability, of penalties. This does not in our opinion ... constitute anything in the nature of overbearing of the will. There is no one in a better position than the informant to know whether there are facts which could be the basis of penalties. The situation of consent, of course, might well be different if the consensual cooperation had been secured by actual threats of a physical nature or of prosecutorial action which had no realistic foundation.

*Id.* at 322–323.

*Accord, United States v. Kolodziej*, 706 F.2d at 595.

◼ Turning to the facts presented, there can be no doubt that McCullogh's consent was given voluntarily. His testimony at the suppression hearing in the prosecution against appellee is the clearest evidence of this reality. The following colloquy occurred between McCullogh and Assistant District Attorney Frank Scutella:

> Q. All right, was it asked of you whether or not you were willing to do this voluntarily?
>
> A. I did it voluntarily.

*        *        *        *        *        *

Q. Now, when you say you did this voluntarily, these—when you had these communications intercepted voluntarily, can you explain that to the Court what you mean by that?

A. It's something that I wanted to do. I had no charges hanging over my head at that time.

* * * * * *

Q. (By Mr. Scutella) Would you rather not have done it?

A. It's something that I wanted to do.

Q. I understand that it's something that you wanted to do, but would you rather have not done it?

A. Yes, I would rather have not done it.

* * * * * *

Q. (By Mr. Scutella) By you saying that you would have rather not done it, how did you come to the fact that you did do it then?

A. I did it because it's something that I wanted to do. Not wanting to do it is, to me, is just like not wanting to go to work. You got to go.

Q. All right, but there had to come a time in your mind when you made a decision either to do it or not to do it; is that correct?

A. I made a decision along with in the presence of Dennis Williams that I wanted to do this.

Q. Now, in making that decision, what factors did you weigh?

A. I didn't want to go to Court on the charges of Receiving Stolen Goods. So, I made a deal with the District Attorney's Office that I would help them in this case.

RR. at 493–495.

The record is replete with such testimony by McCullogh plainly indicating that his actions were designed to serve his best interest. It would be pure sophistry on our part to dismiss what he actually said in favor of an unfounded

inference that the threat of prosecution overwhelmed his free will to the point of making his consent involuntary.

The Superior Court isolated certain testimony elicited by appellee's counsel which it believed supported the conclusion that McCullogh did not freely enter into this agreement.

Q. Sir, the essence of it is is [sic] that when you allowed these telephone conversations between my client and yourself to be recorded, you did so because you had no choice. You knew that if you didn't, the deal would go out the window and you would be prosecuted. Now, isn't that a true statement?

A. Yes.

RR. at 535.

\* \* \* \* \* \*

Q. So, in essence, Mr. McCullough, if you refused to do what Trooper Anderson asked you to do in relation to the recording of telephone calls and the signing of consents, the charges would be revived as you've already testified and the bottom line at the point in time was that you had no choice; they had you over a barrel; isn't that true?

MR. SCUTELLA: Objection, your Honor. It calls for a conclusion on the part of the witness. That's the matter before the Court, whether or not he had a choice.

MR. AMBROSE: Your Honor, his state of mind is relevant.

THE COURT: Overruled.

Q. (By Mr. Ambrose) Isn't that true, sir?

A. That's true.

RR. at 504–505.

See Commonwealth v. Clark, supra, 349 Pa.Super. at 262, 502 A.2d at 1379.

Resort to this language demonstrates the underlying error in the lower courts' analysis. The threat of prosecution, without more, does not vitiate consent. However the

trial court as well as the Superior Court concluded otherwise, finding that the consent *had* to be coerced because of the threat of prosecution.

■ Such a *per se* standard has been rejected by a number of federal courts which have addressed the voluntariness issue under the federal wiretap statutes. However, the suppression court in its memorandum opinion relied heavily upon *United States v. Laughlin*, 222 F.Supp. 264 (D.D.C.1963), in which the court held that a threat of prosecution vitiates consent. We join the substantial number of courts in rejecting *Laughlin* or declining to read it as creating a *per se* rule. *See United States v. Salisbury*, 662 F.2d 738 (11th Cir.1981); *United States v. Silva*, 449 F.2d 145 (1st Cir.1971), *cert. denied*, 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1972); *Baker v. United States*, 430 F.2d 499 (D.C.Cir.1970), *cert. denied* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970) (adopting language from *United States v. Baker*, 301 F.Supp. 977 (D.D.C.1969)); *United States v. Acavino*, 467 F.Supp. 284 (E.D.Pa.1979). *Cf. McClure v. United States*, 332 F.2d 19 (9th Cir.1964), *cert. denied*, 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965); *United States v. Reilly*, 456 F.Supp. 211 (E.D.Pa.1978), *aff'd. without opinion*, 601 F.2d 577 (3d Cir.1979), *cert. denied*, 444 U.S. 903, 100 S.Ct. 216, 62 L.Ed.2d 140 (1979).

Even assuming that a fact finder could conclude on the basis of this record that McCullogh was induced to cooperate by the threat of prosecution, his consent is not rendered involuntary unless the inducement itself was improper. The agreement provided that the District Attorney would dismiss the pending charges against McCullogh in return for his providing information and "cooperation" to the authorities. The requested cooperation was not specified in the agreement. However, McCullogh should have been, and presumably was, aware that the "cooperation" contemplated more than merely providing the District Attorney with a series of unsubstantiated, inculpatory statements. Although he apparently did not know the *manner* in which his cooperation would be requested, McCullogh was keenly

aware that fulfilling his end of the bargain would entail his undertaking some affirmative action.

It is clear that the parties contemplated that the one agreement covered their entire relationship and that the inducement remained the same throughout. Since the inducement—the promise by the District Attorney to drop the pending charges and the threat of refiling the same should McCullogh fail to perform his end of the bargain—was lawful, McCullogh was not improperly induced. Thus his participation in the wiretap was voluntary.

Even if we were to accept the theory suggested by the Superior Court that a subsequent agreement was made, which had the added impact of the disclosures proferred during the course of McCullogh's statement, this fact alone would not be sufficient to vitiate McCullogh's subsequent consent to the wiretap. The existence of the inculpatory statement does not, in our view, negate McCullogh's ability to voluntarily consent to the wiretap. Even if the District Attorney might be precluded from using the statement in a prosecution of McCullogh, the Commonwealth evidently had sufficiently attenuated, independent evidence to support the charges against him. Obviously, this reality motivated McCullogh to seek an agreement with the District Attorney in the first place. As long as there was some basis for concluding that a lawful prosecution could be instituted, the inducement to the consent was the same as in the first agreement and had not changed in character. The avoidance of a lawful prosecution was not an improper inducement. *See United States v. Horton, supra,* 601 F.2d at 322–323; *United States v. Kolodziej, supra,* 706 F.2d at 595.

Concededly, McCullogh's options were unpleasant; however, the choices available to him were a result both of his involvement in prior, admittedly illegal activities and his evident, expressed desire to extricate himself from the possibility of prosecution. His election of the participation

alternative surely was attributable to self-seeking motives; however, such an inducement does not render his consent involuntary. *United States v. Kelly, supra,* 708 F.2d at 125; *United States v. Salisbury,* 662 F.2d 738, 740 (11th Cir.1981); *United States v. Moskow,* 588 F.2d 882, 891 (3rd Cir.1978); *United States v. Osser,* 483 F.2d 727, 730 (3rd Cir.1973), *cert. denied,* 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 321 (1973).

In view of the foregoing, we conclude that McCullogh's consent to participate in the wiretapping and electronic surveillance activities was freely given after a well-counselled,[7] deliberate and conscious assessment of his predicament. To determine that McCullogh's consent was coerced merely because his alternative was unpleasant is to conclude that one cannot choose the lesser of two evils.[8] Such a suggestion belies reality. Because we find that the consent given by McCullogh was not compromised and was, therefore, voluntary, we must reject the Superior Court's Order affirming the suppression of the telephonic disclosures made by Clark to McCullogh.

Accordingly, the Order of the Superior Court affirming the trial court order of suppression of the fruits of the electronic surveillance on the ground that McCullogh's participation was coerced is reversed. The matter is remanded to the Superior Court for resolution of the remaining issues.[9]

HUTCHINSON, Former J., did not participate in the consideration or decision of this case.

ZAPPALA, J., concurs in the result.

7. It is noteworthy, but not dispositive, that McCullogh was accompanied by counsel when the possibility of his participation in the wiretap program was explored with the District Attorney.

8. This assumes, of course, that the possible prosecutorial action has a "realistic foundation," *see United States v. Horton, supra,* 601 F.2d at 322–323, or that other alternatives are lawful.

9. *See* note 3, *supra.*