308

542 A.2d 1036

COMMONWEALTH of Pennsylvania, Appellant,

v.

**Sherman Ross CLARK, Appellee.**

Superior Court of Pennsylvania.

Argued March 11, 1985.

Filed June 6, 1988.

Frank J. Scutella, Assistant District Attorney, Erie, for Com., appellant.

Leonard G. Ambrose, III, Erie, for appellee.

Before DEL SOLE, HESTER and FEENEY *, JJ.

DEL SOLE, Judge:

This case is before us upon remand from the Pennsylvania Supreme Court.

In our initial examination of the case we addressed two issues presented by the Commonwealth. *See: Commonwealth v. Clark*, 349 Pa.Super. 255, 502 A.2d 1375 (1985). After reviewing the facts we concluded that the trial court correctly ruled that conversations recorded between Appellee and Commonwealth informant, Richard McCullough had to be suppressed since the consent issued by Mr. McCullough was not voluntary. However because we found the review and authorization requirements of the Wiretapping and Electronic Surveillance Control Act of 1978, 18 C.S.A. § 5701, *et seq.* (the Act) were complied with regarding a recorded conversation between Appellee and a state trooper on January 9, 1983, we reversed the trial court order which suppressed their contents.

The Supreme Court granted the Commonwealth's request for review to consider "whether the possibility of the refil-

---

* The Honorable John M. Feeney, former Judge of the Court of Common Pleas of Allegheny County, who was sitting by designation on the Superior Court as of March 1985, and whose term of office ended on the first Monday of January 1986, did not participate in the consideration of this matter.

ing of criminal charges against an individual forecloses the individual's ability to voluntarily consent to a request by law enforcement authorities for a wiretap interception." *Commonwealth v. Clark*, 516 Pa. 599, 533 A.2d 1376, 1377 (1987). With regard to this issue the Supreme Court reversed this court's earlier decision and held that Mr. McCullough's consent was freely given. The Supreme Court also noted that the trial court suppressed these same conversations because it found other instances of non-compliance with the provisions of the Act, including the issuance of blanket consents and the failure to the Assistant District Attorney to review the facts prior to authorizing the interceptions. Since these matters were not treated by this court in our initial review of the case, the Supreme Court ordered the case to be remanded "for resolution of the remaining issues." *Id.*, 516 Pa. at 611, 533 A.2d at 1382.

We now consider whether the trial court properly ruled that the provisions of 18 Pa.C.S. § 5704(2)(ii) were not complied with by the Commonwealth in this case. The relevant portion of the statute at issue provides an exception to the general prohibition against the interception or disclosure of communications. It reads in pertinent part:

It shall not be unlawful under this chapter for ...

(2) Any investigation or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

. . . .

(ii) one of the parties to the communication has given prior consent to such an interception. However, no interception under this paragraph shall be made unless the Attorney General, or the district attorney, or a assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception.

In accordance with the Act, the Erie County District Attorney designated Assistant District Attorneys Cauley and Scutella to review the facts and determine if the consent was made voluntarily, to give prior approval to the interception and to comply with the other technical provisions of the Act. Mr. McCullough met with Assistant District Attorney Cauley on October 19, 1982 and at that time executed the first of fifteen consent forms which indicated his willingness to permit the monitoring of his conversations in an effort to detect the activities of those involved with stolen vehicles. Conversations between Mr. McCullough and Appellee were intercepted in the period from December 11, 1982 to January 22, 1983. Consent forms signed by McCullough and numbered as Commonwealth's Exhibits 11, 12 and 13 covered the relevant time period. Exhibit number 11 was signed on December 9, 1982 and was to be effective from December 11 until December 30, 1982. At the expiration of this consent period, Mr. McCullough executed a consent form to cover the interception of communications occurring from January 1 until January 20, 1983, Exhibit number 12. On January 19, 1983, a consent form for the period of January 21 until February 10, 1983 was signed by Mr. McCullough. This form was listed as Commonwealth's Exhibit 13. Each of these consent forms was witnessed by Trooper Dana L. Anderson.

The trial court found that the Commonwealth failed to comply with the provisions detailed in § 5704(2)(ii) regarding consensual interceptions and cited this noncompliance as reason to suppress the contents of the recorded conversations. Specifically, the court found that § 5704(2)(ii) did not permit issuance of consent forms which covered a period of days. It held that a separate consent must be obtained prior to the interception of each communication. The trial court also ruled that the Commonwealth did not establish that the District Attorney or the designated Assistant District Attorney reviewed and gave prior approval to each interception as required by § 5704(2)(ii). The court considered it improper that: "the Assistant District Attorneys supervising the case, considered that their grant of approv-

al was on a continuing basis or presumably the authority to review facts and determine voluntariness and thus authorization of the intercept was delegated to the Pennsylvania State Police." Trial Court Opinion 12/12/83 at 9. (citations to record omitted.)

■ After review, we conclude the trial court erred in holding that blanket consent forms are not permitted by the Act. However, since we find that provisions of § 5704(2)(ii) which requires that no interception may be made unless the district attorney or a designated assistant district attorney "has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception", was not followed in this case, we affirm the suppression of the communications at issue.

In *Commonwealth v. Adams,* 362 Pa.Super. 549, 524 A.2d 1375 (1987) this court had occasion to consider the validity of blanket consents. Therein it was held: "There is no statutory requirement that consent be authorized prior to every conversation nor does § 5704(2)(ii) set forth a specific length of time during which a consent remains viable." *Id.*, 362 Pa.Superior Ct. at 555, 524 A.2d at 1378. In reaching its decision, the *Adams'* court referred to the trial court's opinion in the instant case. It found the trial court's analysis, which interpreted the statute to require a new consent prior to the interception of each communication, to be "unpersuasive". *Id.*

Although it was determined that blanket consents did not violate the requirements of § 5704(2)(ii) in *Commonwealth v. Adams, Id.,* it is necessary to examine the factual context in which that decision was made. An ongoing conspiracy involving the distribution of marijuana was the subject of the investigation in *Adams.* In an effort to gather evidence the Attorney General designated Deputy Attorney General Peters to approve the use of electronic surveillance. Peters personally interviewed a Mr. Maruca and determined that he was voluntarily consenting to the use of a tap on his telephone. Mr. Maruca then executed a consent form which established a ten day time period for conducting the surveil-

lance. At the expiration of this period Peters again interviewed Maruca, this time by phone, to determine if he would voluntarily consent to conducting the interceptions for another ten day period. After the interview Maruca signed a memorandum of consent form. This process continued until six such forms were signed each for ten day time periods. In approving the procedure utilized, it was stated:

> Our holding should not be interpreted to mean that once valid consent has been given, it remains in effect for as long as the informant engages in conversations which he knows are being taped; rather, by this Opinion, we uphold as consistent with the Pennsylvania Wiretap Act, the procedure implemented by the Office of the Attorney General in this case, *i.e.*, the consistent interviewing of the informant to ensure that his consent was being given voluntarily and the use of memorandums of consent which authorized interceptions for ten day periods. We hold that the Wiretapping and Electronic Surveillance Control Act does not require that consent be given prior to each recorded communication.

*Id.* (footnote omitted).

█ The critical difference between the facts described in *Adams* from those found in the instant case is the absence in this case of a continued examination of the consenting party by someone authorized to give approval prior to the interception. The court in *Adams* pointed out that the Deputy Attorney General spoke to the consenting party to ascertain the voluntariness of his actions prior to the signing of each memorandum of consent. The court approved the procedure utilized with specific reference to the "consistent interviewing" of the consenting party. In contrast in the case before us, the Assistant District Attorneys authorized to approve the interceptions did not meet with or speak to McCullough prior to obtaining his consent for each new period of surveillance.

Both Assistant District Attorney Cauley and Scutella were questioned about their contacts with the informant,

Mr. McCullough. They revealed that Mr. Cauley was principally involved with Mr. McCullough's initial agreement to consent to interceptions in October of 1982. At this time the authorities were centering their investigation on two individuals, Mr. Tharp and Mr. Manta. The investigation lasted for approximately six months beginning in October 1982. Mr. Scutella testified that during the course of the investigation he talked to Mr. McCullough relative to his continued participation and cooperation "anywhere from six to twelve times." He further stated:

> I can say for sure that I talked to Mr. McCullough every time that he—that the state police purchased a truck from Mr. Manta because I was usually present when that happened. Mr. McCullough would be equipped with monitoring equipment.... I observed Mr. McCullough again between six to twelve times, I may not have talked to him on all of those occasions, but my purpose was to see how Mr. McCullough was doing and whether he was balking or hesitating or coming to a point where he did not want to go along with what was happening.

N.T. 11/8/83 at 64.

In speaking of the investigation as it proceeded with respect to Appellee, Mr. Scutella testified:

> ... and with most respects to Mr. Clark, the police would call me and contact me and say this is going to happen and this is going to happen with these two individuals—
> ... Trooper Anderson would contact me occasionally; Trooper Povlick would contact me and say that certain portions of the transactions between Mr. Clark and Mr. Wintrode were going to occur. I would then ask them, have you talked to Mr. McCullough, is Mr. McCullough continuing to sign these consents. And at the time I did not believe we had to have all the consents that we did. I asked them to do that to show a continuing course of consent, and they indicated to me that, yes, he was. And I believe that we introduced all of those.

N.T. 11/8/83 at 60.

The conversations between Appellee and Mr. McCullough occurred in December of 1982 and January of 1983. As

noted Mr. McCullough signed consent forms identified as Commonwealth's Exhibits 11, 12 and 13 which covered this time frame. District Attorneys Cauley and Scutella both indicated that they were not present when Mr. McCullough signed these consent forms, and in fact they had not contacted Mr. McCullough prior to execution to ascertain his consent. Mr. Cauley was questioned:

> Q. Under the provisions of Chapter 57 is it your belief or was it your belief at that particular time that you could delegate your statutory responsibilities to a police officer for the police officer to ascertain the voluntariness of the particular person's consent in terms of the execution of a Memorandum of Consent?

He responded:

> Not in a cold case, Mr. Ambrosee. In a case such as this under these circumstances I saw no problem with relying on information that I got from the State Police, from my County Detective, from other State Police officers and from my own personal observation on the one occasion that Mr. McCullough was continuing to consent. In a cold case where informants were being used for the first time that I had never seen or never interviewed or never been involved in, I wouldn't do that. I this case having made the initial judgment that Mr. McCullough agreed to these interceptions on October 19th and would agree to as part of the arrangement that we entered into with him and having had that judgment continually confirmed by a long series of events including his continued participation, his—his lack, if you will, of any objection or refusal to do these things, and in fact at least early on he seemed to be enjoying some of these things to tell you the truth. He enjoyed working with them.

N.T. 10/26/83 at 112–113.

Mr. Scutella testified similarly regarding Mr. McCullough's consent:

> ... my recollection is that Trooper Anderson would contact us and indicate that a consent form had been signed both Mr. and Mrs. McCullough and that they were volun-

tarily continuing with their consents on the interception of their telephone communication.

Q. Let's take that answer, let's take that answer. He would only contact you, from what you said, after the consent form was already signed, and he would tell you, after the consent from was signed, according to your own answer, that they were continuing to voluntarily consent? That is what you just said, is that true?

A. If I said it, I said it, yes.

N.T. 11/8/83 at 111.

The court in *Commonwealth v. Adams, supra.*, held that the procedure utilized in that case, including the consistent interviewing of the informant to ensure his consent, was consistent with the Pennsylvania Wiretap Act. The court also expressly noted that an informant's continued participation in conversations which he knows are being taped is not sufficient to establish valid consent. In the instant case the Commonwealth relied upon information supplied by others to ascertain Mr. McCullough's consent. Unlike the facts present in *Adams* the Commonwealth here did not establish that the requirements of § 5704(2)(ii) were met. Neither Assistant District Attorneys Cauley or Scutella demonstrated that they had previously reviewed the facts, that they had become satisfied through personal contact with Mr. McCullough that his consent was voluntary and that they had given prior approval for the interception.

In his Dissenting Opinion in *Commonwealth v. Schaeffer*, 370 Pa.Super. 179, 536 A.2d 354 (1987), our colleague, Judge Rowley wrote that in his belief the limitations provided to consensual wiretapping found in § 5704(2)(ii) "are sufficient to guard against the unlimited and indiscriminate use of such interceptions and the evidence obtained therefrom and act as an adequate deterrent to inappropriate police activity. Moreover, such limitations drastically minimize the likelihood of an invasion of the lawabiding citizen's legitimate expectations of privacy." *Id.*, 370 Pa.Superior Ct. at 271, 536 A.2d at 400. However, even the minimum protection offered by § 5704(2)(ii) was not followed in this

case. The provisions of the Act must be strictly adhered to in order to insure that safeguards are in place to protect persons from unauthorized surreptitious interceptions. Here, the supervision directed by the Act was not followed. The responsibilities outlined in the Act regarding the duties of the Attorney General, District Attorney or their designee are non-deligable. Those persons responsible for authorizing interceptions under the Act must personally review the facts, ascertain directly from the consenting party the voluntariness of his or her consent and give prior approval to the interceptions. The Assistant District Attorneys' designated to authorize the interception of Appellant's conversations with Mr. McCullough never performed these prepatory duties. Rather, these duties were wrongly delegated to and undertaken by the Pennsylvania State Police.

Since we conclude that the provisions for the interception of communications found in § 5704(2)(ii) were not followed, we affirm the trial court order which suppressed the contents of the intercepted conversations at issue.