J-S25040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                :         PENNSYLVANIA
                :
          v.           :
                :
                :
DAVID DARR,             :
                :
         Appellant     :         No. 1997 MDA 2018

Appeal from the Judgment of Sentence Entered November 8, 2017
in the Court of Common Pleas of Lackawanna County
Criminal Division at No(s):  CP-35-CR-0001695-2016

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:       **FILED: JULY 25, 2019**

David Darr ("Darr") appeals from the judgment of sentence imposed following his conviction of possession with intent to deliver ("PWID"), delivery of a controlled substance, and criminal use of a communication facility.[1] Additionally, Kurt J. Lynott, Esquire ("Attorney Lynott"), has filed a Petition to Withdraw as counsel, and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967).  We grant Attorney Lynott's Petition to Withdraw, and affirm Darr's judgment of sentence.

In its Opinion, the trial court set forth the relevant factual history as follows:

> On July 14, 2016, Lackawanna County Detectives met with a confidential informant (C.I.) regarding the sale of narcotics in the city of Scranton by a white male known as "Dave," later

---

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 7512.

identified as … Darr. The C.I. provided police with a description of [] Darr, his cell phone number, and the address of his apartment, 430 Phelps Street, where he conducted drug transactions. The C.I. informed police that when [] Darr was unavailable, he/she would be directed to contact another drug associate, a male known as "B," later identified as … Brandon Maxie ("Maxie").[2] The C.I. provided a description of [] Maxie, his cell phone number, and the address of his apartment, 139 Main Street in Old Forge.

As a result, the C.I. was consensualized and then contacted [] Darr regarding a possible drug transaction, but was instructed to contact [] Maxie instead. The C.I. arranged a drug transaction with [] Maxie[,] with the meet location established at [] Maxie's apartment. The police searched the C.I., provided him/her with prerecorded buy money, and established surveillance. Police witnessed [] Darr exit [] Maxie's apartment, enter a silver Chrysler 300, and drive to 430 Phelps Street and enter his apartment. Police observed the C.I. arrive at [] Maxie's apartment[,] meet briefly with [] Maxie on the porch, and enter his apartment. Within a few minutes, the C.I. exited the apartment and immediately turned over to police a quantity of crack cocaine packaged in plastic twist baggies. … [T]he C.I. was searched, and he/she informed police that the drug transaction occurred inside the apartment[,] with [] Maxie selling him/her the crack cocaine.

Later that day, the C.I. placed intercepted text messages to [] Darr and arranged a drug transaction[,] with the meet location at [] Darr's apartment. Police searched the C.I., provided him/her with prerecorded buy money, and established surveillance. Police observed the C.I. arrive and enter [] Darr's apartment. Within a few minutes, the C.I. exited the apartment and immediately turned over to police a quantity of crack cocaine and powder cocaine packaged in plastic twist baggies. The C.I. was searched, and he/she informed police that while [] Maxie was present inside the apartment, [] Darr sold him/her the drugs. On July 15, 2016, Detectives met with the C.I. and arranged another controlled buy with [] Darr. Police went through the same procedures[,] and the meet location was established at [] Darr's apartment. While under surveillance, the C.I. arrived at the meet location and entered []

_____

[2] Darr was tried with co-defendant Maxie, who is not a party to the instant appeal.

Darr's apartment. After a few minutes, the C.I. exited the apartment and immediately turned over to police twenty glassine bags of heroin and a plastic twist baggie of crack cocaine.

As a result of these three controlled buys, police obtained two search warrants for both [Darr's and Maxie's] apartments. Police established surveillance around [] Darr's apartment. After police observed [] Darr driving the silver Chrysler in that area, police conducted a traffic stop on [] Darr's vehicle and detained him. While [] Darr was present, police conducted a search of his apartment, and [] Darr admitted to the presence of heroin. Police found over 300 glassine bags of heroin and drug paraphernalia. Police executed the search warrant on [] Maxie's apartment and found quantities of crack cocaine and powder cocaine, Klonopin tablets, and prerecorded buy money. Police also obtained written statements from both [Darr and Maxie] admitting that the drugs belonged to them[,] and that they conducted drug transactions.
…

*See* Opinion and Order, 5/5/17, at 2-4 (footnote added). Darr was arrested and charged with various drug-related offenses.

On January 12, 2017, Darr filed an Omnibus Pre-Trial Motion, including, *inter alia*, a Motion to suppress evidence, alleging violations of the Wiretapping and Electronic Surveillance Control Act (the "Wiretap Act"), 18 Pa.C.S.A. § 5701 *et seq*. The Commonwealth filed an Answer. The suppression court conducted a hearing, and ultimately denied Darr's Omnibus Pre-Trial Motion on May 5, 2017.

Following a stipulated bench trial, Darr was convicted of the above-mentioned crimes. The trial court sentenced Darr to an aggregate term of 4 to 8 years in prison, with credit for time served. Darr filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters

complained of on appeal. However, on July 31, 2018, this Court dismissed Darr's appeal due to his failure to file an appellate brief.

Darr filed a Petition for relief pursuant to the Post Conviction Relief Act ("PCRA"),[3] acknowledging that his counsel had failed to file an appellate brief on his behalf, and requesting reinstatement of his direct appeal rights, *nunc pro tunc*. The PCRA court appointed Attorney Lynott as Darr's counsel. On November 15, 2018, the PCRA court granted Darr's Petition and reinstated his direct appeal rights, *nunc pro tunc*. Darr, through Attorney Lynott, filed a timely Notice of Appeal and a court-ordered Concise Statement. On March 4, 2019, Attorney Lynott filed a Petition to Withdraw as counsel, and an accompanying **Anders** Brief.

We must first determine whether Attorney Lynott has complied with the dictates of **Anders** in petitioning to withdraw from representation. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw.") (citation omitted). Pursuant to **Anders**, when an attorney believes that an appeal is frivolous and wishes to withdraw as counsel, he or she must

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal

---

[3] 42 Pa.C.S.A. §§ 9541-9546.

would be frivolous, (2) file a brief referring to any issues in the record of arguable merit, and (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel or to raise any additional points that he deems worthy of the court's attention. The determination of whether the appeal is frivolous remains with the [appellate] court.

*Commonwealth v. Burwell*, 42 A.2d 1077, 1083 (Pa. Super. 2012)

(citations omitted).

Additionally, the Pennsylvania Supreme Court has determined that a proper *Anders* brief must

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

In the instant case, Attorney Lynott has complied with the requirements set forth in *Anders* by indicating that he made a conscientious review of the record and determined that Darr's appeal would be wholly frivolous. Further, the record contains a copy of the letter that Attorney Lynott sent to Darr, informing him of Attorney Lynott's intention to withdraw, and advising him of his right to proceed *pro se*, retain counsel, and file additional claims.[4] Finally, Attorney Lynott's *Anders* Brief meets the standards set forth in *Santiago*.

---

[4] Darr did not file a *pro se* appellate brief, nor did he retain alternate counsel for this appeal.

Because Attorney Lynott has complied with the procedural requirements for withdrawing from representation, we will independently review the record to determine whether Darr's appeal is, in fact, wholly frivolous.

In the **Anders** Brief, Attorney Lynott raises the following issue for our review: "Did the [t]rial [c]ourt err as a matter of law and/or abuse its discretion in determining that the Commonwealth did not violate the Wiretap Act[,] and properly consensualized the confidential informant[?]" **Anders** Brief at 4.

Darr challenges the suppression court's denial of his Motion to suppress, and claims that the Commonwealth failed to properly consensualize the C.I., in violation of the Wiretap Act. **Id.** at 7. Citing **Commonwealth v. Clark**, 542 A.2d 1036 (Pa. Super. 1988), Darr challenges the deputy district attorney's use of a telephone interview of the C.I., as opposed to an in-person interview. **Id.**

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression

court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation, brackets and ellipses omitted).

Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution protect citizens from unreasonable searches and seizures. *Commonwealth v. Richter*, 791 A.2d 1181, 1184 (Pa. Super. 2002). Therefore, "[a] warrantless search or seizure is *per se* unreasonable unless it falls within a specifically enumerated exception." *Commonwealth v. Lee*, 972 A.2d 1, 3 (Pa. Super. 2009) (citation omitted).

As this Court has recognized, the Wiretap Act

is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these *otherwise illegal practices* and their derivative fruits may be used.

*Commonwealth v. McMillan*, 13 A.3d 521, 524 (Pa. Super. 2011) (emphasis in original; citation omitted).

However, the Wiretap Act contains an exception allowing law enforcement to utilize wiretaps without obtaining prior judicial approval when one of the parties to the conversation consents to the interception:

**§ 5704.  Exceptions to prohibition of interception and disclosure of communications**

It shall not be unlawful and no prior court approval shall be required under this chapter for:

\* \* \*

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

\* \* \*

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be initiated, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception ….

18 Pa.C.S.A. § 5704(2)(ii).

In **Clark**, **supra**, this Court considered whether the requirements set forth in Section 5704(2)(ii) had been satisfied, where the Commonwealth did not establish that the district attorney or a designated assistant district attorney reviewed and gave prior approval to each interception. **Clark**, 542 A.2d at 1038. This Court explained that

The responsibilities outlined in the [Wiretap] Act regarding the duties of the Attorney General, District Attorney or their designee are non-del[e]gable. **Those persons responsible for authorizing interceptions under the [Wiretap] Act must personally review the facts, ascertain directly from the**

- 8 -

> **consenting party the voluntariness of his or her consent and give prior approval to the interceptions.**

*Id.* at 1040 (emphasis added). This Court upheld the suppression of intercepted communications, because the duties of authorizing the intercepted communications "were wrongly delegated to and undertaken by the Pennsylvania State Police." *Id.*

In its Opinion, the trial court aptly addressed Darr's claim as follows:

> Here, Detective [Corey] Conrad [("Detective Conrad")] detailed the process used by law enforcement to consensualize the C.I. and obtain his/her consent for purposes of interception. Detective Conrad testified that after police met with the C.I. on July 14, 2016[,] and obtained information regarding the purchase of drugs from [Darr and Maxie], Lackawanna County Deputy District Attorney Michael Ossont ("DDA Ossont"), who is authorized to approve interception, was contacted by phone. Detective Conrad stated that he discussed the information with [DDA] Ossont, and then [DDA] Ossont interviewed the C.I. over the phone. Detective Conrad testified that he observed the C.I. during the consensualization process, and that based on his training and experiences, the C.I. was not coerced in any way. Detective Conrad again spoke to [DDA] Ossont over the phone and was given approval for interception. After approval was given, Detective Conrad executed the Memorandums of Consent, which indicated the C.I.'s consent to freely and voluntarily allow the Lackawanna County District Attorney's Office to intercept and record his/her communications with [Darr and Maxie]. The Memorandums of Consent were signed and dated by the C.I. and witnessed by Detective Conrad. Detective Conrad then executed the Memorandums of Approval, indicating that the approval was given by [DDA] Ossont "via phone," which acknowledged that [DDA] Ossont interviewed the C.I. and obtained his/her consent over the phone. Both Memorandums specifically stated the subjects to be [] Darr and … Maxie, and that the interception may occur on or about 7-14-2016 to 8-14-2016.
>
> The interception and recording in this case were legally sound. The facts here are distinguishable from ***Clark***, because [DDA] Ossont directly interviewed the C.I. over the phone

regarding his/her willingness to consent to the interception of cellular communications with [Darr and Maxie], then indicated to Detective Conrad that he was satisfied the C.I. was freely and voluntarily consenting. Police provided the C.I. with a Memorandum of Consent[,] which the C.I. read and signed, and [DDA] Ossont executed a Memorandum of Approval over the phone, which approved the interception. These steps by the Commonwealth meet the requirements of the [Wiretap] Act.

Trial Court Opinion, 5/5/17, at 10-13 (citations omitted); *see also id.* at 13 (wherein the trial court also specifically credited Detective Conrad's testimony).

Upon review, we conclude that the trial court's factual findings are supported by the record. *See Arnold*, *supra*. Additionally, we agree with the trial court's determination that DDA Ossont complied with the Wiretap Act, because Detective Conrad provided him with the relevant information; he spoke directly with the C.I.; and he personally consensualized the C.I. over the telephone. *See* Trial Court Opinion, 5/5/17, at 12-13; *see also Commonwealth v. Glass*, 200 A.3d 477, 485-86 (Pa. Super. 2018) (concluding that the deputy district attorney's actions conformed with the dictates of the Wiretap Act, where he personally reviewed the facts and ascertained the voluntariness of the C.I.'s consent via a telephone interview). Thus, Darr's claim lacks merit.[5]

---

[5] Darr also briefly argues that his counsel was ineffective for allowing him to agree to a stipulated bench trial, and for failing to file an appellate brief. *Anders* Brief at 8. However, challenges to trial counsel's effectiveness may not be raised until collateral review. *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). Therefore, even if these arguments had been properly preserved in his Concise Statement and developed in the *Anders* Brief, we would decline to address them.

Finally, our independent review of the record discloses no additional non-frivolous issues that Darr could raise on appeal. We therefore grant Attorney Lynott's Petition to Withdraw, and affirm Darr's judgment of sentence.

Petition to Withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2019