J-S18018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK LHERISON | : | |
| | : | |
| Appellant | : | No. 743 MDA 2018 |

Appeal from the Judgment of Sentence March 13, 2018
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0000572-2017

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:              **FILED: SEPTEMBER 17, 2019**

Appellant Patrick Lherison appeals from the judgment of sentence imposed following his bench trial convictions for two counts each of possession of a controlled substance, possession of a controlled substance with intent to deliver (PWID), and possession of drug paraphernalia, and one count each of delivery of a controlled substance and criminal use of communication facility.[1] Appellant challenges the Commonwealth's compliance with the mandates of the Wiretapping and Electronic Surveillance Control Act[2] (Wiretap Act), the legality of the warrantless search of his vehicle, and the sufficiency and weight of the evidence supporting his convictions.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16), (30), (32), and 18 Pa.C.S. § 7512(a), respectively.

[2] 18 Pa.C.S. §§ 5701-5782.

The trial court set forth the relevant facts of this appeal as follows:

At trial, Detective Harold Zech . . . testified that on March 7, 2017, he and Lackawanna County Detective John Munley . . . met with a Confidential Informant [(CI)] regarding the sale of heroin and cocaine by an individual known as "Cali," who was later identified as [Appellant]. [Detective] Zech further testified that the CI informed him that "Cali" commonly traveled to the drug transactions in a black Jeep with his girlfriend . . . . The CI described [Appellant] as a black male, with short cropped hair, light facial hair, approximately 5'9" tall and a medium build. At trial, the CI explained that she informed the detectives that [Appellant] was her drug dealer and she could contact him by cell phone and arrange to purchase heroin, similar to the previous controlled buys she had completed while working with Detectives Zech and Munley.

The CI further testified that after she was consensualized by Assistant District Attorney [(ADA)] Michael Ossont, she called [Appellant] and arranged for him to come to her hotel room to sell her heroin. While waiting for [Appellant] to arrive, [Detective] Zech thoroughly searched [the CI] and her hotel room for money and contraband, but neither were found. The CI explained that she was provided with $200 of pre-recorded money and outfitted with a covert audio recording device. Subsequently, detectives testified they established surveillance around the CI's hotel.

Afterwards, [Detective] Zech testified that he observed [Appellant] arrive at the CI's hotel in his black Jeep, exit the vehicle with a plastic shopping bag, and proceed to enter the CI's hotel room. After [Appellant] entered the hotel room, the detectives could hear the transaction between the CI and [Appellant], via the covert audio recording device. Subsequently, [Appellant] exited the CI's hotel room with the same plastic bag and entered his Jeep. Thereafter, the CI met with [Detective] Zech and provided 25 blue glassine bags of heroin. The CI explained that [Appellant] . . . carried the heroin in his plastic bag. Accordingly, officers conducted a . . . traffic stop on [Appellant's] vehicle.

Immediately, officers located the plastic bag near [where Appellant's] feet [had been] in his vehicle. Detective Munley searched the bag and recovered $1,200 in U.S. currency, 459

bags of heroin, and 84 grams of cocaine.  Officers also conducted a search incident to arrest and located the target cell phone, as well as the pre-recorded serialized money previously provided to the CI.

In addition, [Detective] Munley searched [Appellant's] vehicle and located a safe in the back seat.  The safe contained 2,950 bags of heroin wrapped in brick form, $2,000 in U.S. currency, and a plastic pill bottle containing five (5) Xanax tablets and two (2) Clonazepam tablets.  The vehicle search also yielded three digital scales, a grinder, empty glassine bags, rubber bands, spoons, measuring cups, and inositol powder, a cutting agent.

Trial Ct. Op., 9/27/18, at 4-6 (record citations omitted).

On September 15, 2017, Appellant filed a motion to suppress physical evidence.  Appellant argued that the police conducted an illegal, warrantless arrest without probable cause.  Appellant further argued that the police conducted an illegal, warrantless search of his vehicle.  Appellant concluded that "any physical items seized from [Appellant's] person and vehicle were tainted due to improper police conduct[.]"  Suppression Mot. 9/15/17, at 2 (unpaginated).  In his brief in support of the suppression motion, Appellant explained that he sought to challenge the Commonwealth's compliance with the mandates of the Wiretap Act.  Specifically, Appellant disputed whether the Commonwealth properly consensualized the CI.

The trial court conducted a suppression hearing on October 25, 2017. On November 27, 2017, the trial court denied Appellant's suppression motion. Following a bench trial, the trial court convicted Appellant of two counts each of PWID, possession of a controlled substance, and possession of drug

paraphernalia, and one count each of delivery of a controlled substance and criminal use of communication facility.

On February 21, 2018, Appellant filed a motion in arrest of judgment, claiming that insufficient evidence supported his convictions. Appellant argued that the trial court erred in permitting the Commonwealth's forensic scientist, Lauren Force, to testify regarding the results of laboratory testing on the drugs seized from Appellant. Appellant insisted that the Commonwealth "never produced evidence supporting the necessary certifications for the lab and equipment used" to test the drugs. Mot., 2/21/18, at 2 (unpaginated). In a separate motion in arrest of judgment also filed on February 21, 2018, Appellant challenged the weight assigned to the testimony from the CI.

The trial court conducted a hearing on Appellant's motions on February 28, 2018. In addition to his arguments in support of the motions, Appellant asked the trial court to reconsider its suppression ruling. Appellant also raised a new challenge to the testimony from Ms. Force:

> [Trial Counsel]: Your Honor, I think what [Appellant's] indicating is that during the trial testimony, I believe the forensic chemist testified that she only measured a certain amount of the bags that were seized. And [Appellant's] position is that unless she testified as to each of the bags as to what was in that particular bag and the weight, that that should not impact his sentencing from the terms of any type of quantity unless it was, you know, unless as I said each of the bags was established as being a controlled substance.

N.T. Hr'g., 2/28/18, at 7.

- 4 -

By order entered March 13, 2018, the trial court denied Appellant's post-trial requests for relief.  That same day, the trial court sentenced Appellant to an aggregate term of eleven to twenty-seven years' imprisonment, followed by sixteen years of special probation.

Appellant timely filed post-sentence motions, which the trial court denied on April 17, 2018.[3]  That same day, the trial court permitted trial counsel to withdraw from representation.  Prior to the appointment of new counsel, Appellant timely filed a *pro se* notice of appeal on May 1, 2018.  On June 19, 2018, newly appointed counsel filed an entry of appearance in this Court.

Thereafter, Appellant filed a counseled Pa.R.A.P. 1925(b) statement.  The trial court filed a responsive opinion concluding (1) ADA Ossont provided proper approval for the interception of communications between Appellant and the CI; (2) the police possessed probable cause to arrest Appellant, and they

---

[3] The trial court notes that Appellant timely filed a motion for reconsideration of sentence, and the court conducted a hearing on the motion on April 9, 2018. Trial Ct. Op. at 7.  The certified record, however, does not contain a copy of the post-sentence motion or any transcript for the April 9, 2018 hearing. Additionally, the criminal docket from the Court of Common Pleas does not list the filing of the post-sentence motion, and our review of the sentencing transcript reveals that Appellant did not make an oral motion following the imposition of sentence.

Nevertheless, the record includes a rule, filed on March 26, 2018, issued to show cause as to why the trial court should not grant the relief requested in Appellant's post-sentence motion.  The record also includes an order denying Appellant's post-sentence motion on April 17, 2018.  Significantly, this order notified Appellant of his right to file a notice of appeal within thirty days.

conducted a legal search of Appellant's vehicle pursuant to the automobile exception to the warrant requirement; (3) Appellant's vague Rule 1925(b) statement resulted in the waiver of his challenges to the weight and sufficiency of the evidence; and (4) even if Appellant had not waived his weight and sufficiency challenges, no relief is due.

Appellant now raises four issues for our review:

[1]. Whether the trial court erred when it denied Appellant's omnibus pretrial motion to exclude/suppress evidence of the recorded in-person conversation between him and the [CI] on March 7, 2017 for the following reasons:

[A.] It was not supported by reasonable grounds to suspect criminal activity as required by 18 Pa.C.S. § 5704;

[B.] It is based upon a defective memorandum not signed by Assistant District Attorney Michael Ossont since the memorandum and testimony indicated that it was approved over the phone contrary to the requirements of the statute;

[C.] The memorandum of approval states: "I, Mike Ossont . . . have reviewed the memorandum of Detective Harold Zech, dated 3/17/2017 . . ." but the detective's memorandum is clearly dated 3/7/2017[;] thus, it appears that ADA Ossont did not have Detective Munley's memorandum when he allegedly authorized the intercept[.]

[2]. Whether the trial court erred when it denied Appellant's omnibus motion to suppress the evidence seized from his person and his vehicle for the following reasons:

[A.] The searches and seizures were without probable cause and without a lawfully issued search warrant or other legal justification; and

[B.] The search and seizures were in violation of the U.S. Constitution Fourth Amendment and the Pennsylvania

[Constitution] Article I, [Section] 8's prohibition against unreasonable searches and seizures.

[3]. Whether the verdicts . . . were contrary to the weight of the evidence[.]

[4]. Whether the verdicts . . . were supported by sufficient evidence[.]

Appellant's Brief at 4-5 (full capitalization omitted).

In his first issue, Appellant contends that the Commonwealth failed to establish "reasonable grounds" to support the interception of his communications with the CI. *Id.* at 23. Prior to obtaining authorization for the interception, Appellant asserts that Detective Zech "failed to provide any information [identifying Appellant] as being involved in the distribution of a controlled substance." *Id.* at 24. Appellant insists that Detective Zech "did not state that the CI had purchased any controlled substances from Appellant in the past," and "did not state that the CI had provided in the past, reliable and accurate information that led to the arrest and conviction of a drug dealer." *Id.*

Further, Appellant argues that ADA Ossont issued a defective "memorandum of approval"[4] to authorize the interception. *Id.* Appellant emphasizes that the memorandum of approval was dated March 17, 2017, which was ten days after the interception occurred. *Id.* at 25. Moreover,

_____

[4] At the suppression hearing, the Commonwealth submitted into evidence several forms memorializing the investigators' compliance with the Wiretap Act, including the memorandum of approval. *See* N.T. Suppression Hr'g., 10/25/17, at 5. Although the record does not include these exhibits, Detective Zech testified regarding the information contained within the forms.

Appellant relies on **Commonwealth v. Clark**, 542 A.2d 1036 (Pa. Super. 1988), to support his assertion that the Commonwealth did not adequately verify the CI's consent to interception because ADA Ossont interviewed the CI over the phone instead of conducting a face-to-face meeting. **Id.** at 26, 29. Appellant concludes that the Commonwealth failed to comply with the mandates of the Wiretap Act, and the trial court should have granted his suppression motion. **Id.** at 29.

We apply the following standard when reviewing the denial of a suppression motion:

> [O]ur initial task is to determine whether the [trial court's] factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

**Commonwealth v. Bryant**, 67 A.3d 716, 724 (Pa. 2013) (citation omitted).

This Court has explained that the Wiretap Act

> is a pervasive scheme of legislation which suspends an individual's constitutional rights to privacy only for the limited purpose of permitting law enforcement officials, upon a showing of probable cause, to gather evidence necessary to bring about a criminal prosecution and conviction. The statute sets forth clearly and unambiguously by whom and under what circumstances these otherwise illegal practices and their derivative fruits may be used.

**Commonwealth v. Glass**, 200 A.3d 477, 483 (Pa. Super. 2018) (citation omitted), *appeal denied*, 5 MAL 2019 (Pa. filed July 2, 2019).

Nevertheless, the Wiretap Act provides the following exception, which allows law enforcement to utilize wiretaps without obtaining prior judicial approval when one of the parties to the conversation provides consent:

**§ 5704. Exceptions to prohibition of interception and disclosure of communications**

It shall not be unlawful and no prior court approval shall be required under this chapter for:

\* \* \*

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

\* \* \*

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be initiated, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however, such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom[.]

18 Pa.C.S. § 5704(2)(ii).

"In determining whether the approval of a consensual wiretap was proper, this Court has determined that police officers must articulate 'reasonable grounds' for the monitoring and the . . . district attorney must verify that that these reasonable grounds exist." ***Commonwealth v. McMillan***, 13 A.3d 521, 525 (Pa. Super. 2011) (citations omitted); ***see also Commonwealth v. Taylor***, 622 A.2d 329, 333 (Pa. Super. 1993) (explaining that reasonable grounds existed to support a consensual wiretap where, prior to the interception, the informant provided the police with "abundant" information about his illegal dealings with the defendant, and the assistant attorney general interviewed the informant to verify the existence of the reasonable grounds).

"The responsibilities outlined in the Act regarding the duties of the . . . District Attorney or their designee are non-del[e]gable." ***Clark***, 542 A.2d at 1040. "Those persons responsible for authorizing interceptions under the Act must personally review the facts, ascertain directly from the consenting party the voluntariness of his or her consent and give prior approval to the interceptions." ***Id.***

Instantly, the trial court evaluated the suppression hearing record and determined that the Commonwealth's interception of Appellant's communications did not violate the Wiretap Act:

> Here, the CI informed [Detective] Zech that [Appellant] was her drug dealer and she could purchase heroin from him at . . . the

- 10 -

Econo Lodge.[5]  The CI provided [Detective] Zech with a physical description of [Appellant] as well as his vehicle, a black Jeep.  The CI explained that [Appellant] commonly used his Jeep to facilitate drug transactions with her and transport narcotics.  The CI further explained that [Appellant] often travels with his girlfriend, a heroin user.  The CI prefaced that [Appellant's] cell phone number had a California area code and provided the number to [Detective] Zech.  Based on this information, there was reasonable grounds to intercept communications between the CI and [Appellant].

\*     \*     \*

[The c]ourt finds that ADA Ossont provided proper approval under [Section] 5704(2)(ii).  .  .  .  [Detective] Zech testified that he called ADA Ossont prior to the interception and explained to him the contents of the Officer's Memorandum,[6] the basis for the investigation, the circumstances surrounding the case, what the detectives were looking to achieve by intercepting conversations between the CI and [Appellant], where it was going to take place, the time period estimated for the investigation, and the equipment the detectives would use to intercept the conversations.

Moreover, an Assistant District Attorney's determination of the voluntariness of the [CI's] consent, and over the phone approval does not violate the requirements of Section 5704(2)(ii).

\*     \*     \*

ADA Ossont was sufficiently apprised of the contents of [the detective's] Memorandum.  A common sense, non-technical reading of the Memorandum of Approval clearly indicates that the defect in the dates was an immaterial clerical error.  As stated

---

[5] Detective Zech also testified that he had worked with the CI on prior occasions, but he could not remember the precise number of drug investigations involving the CI.  *See* N.T. Suppression Hr'g at 15.

[6] The Commonwealth also submitted the officer's memorandum at the suppression hearing.  *See* N.T. Suppression Hr'g at 5.  Detective Zech testified that the officer's memorandum "outlines the investigation as to what we're looking to have take place."  *Id.* at 18.

above, ADA Ossont was provided with the relevant information surrounding the investigation.[7]

Trial Ct. Op. at 8-11 (record citations omitted). Our review of the record supports the trial court's findings. *See Bryant*, 67 A.3d at 724.

Further, Appellant's reliance on *Clark* is misplaced. In *Clark*, this Court emphasized that "the Assistant District Attorneys authorized to approve the interceptions did not meet with **or speak to** [the informant] prior to obtaining his consent for each new period of surveillance." *Clark*, 542 A.2d at 1039; *see also Commonwealth v. Adams*, 524 A.2d 1375 (Pa. Super. 1987) (approving of a procedure where a deputy attorney general conducted a telephone interview with an informant to determine the voluntariness of his consent to a second ten-day period of interceptions). Unlike *Clark*, Detective Zech's testimony definitively established that ADA Ossont "had an in-depth interview over the phone" with the CI to review the issue of consent. N.T. Suppression Hr'g at 20. Therefore, the Commonwealth complied with the mandates of the Wiretap Act, and Appellant is not entitled to relief on his first claim. *See Bryant*, 67 A.3d at 724; 18 Pa.C.S. § 5704(2)(ii).

In his second issue, Appellant contends that the police conducted an illegal warrantless search of his vehicle after they stopped him in the parking

---

[7] At the suppression hearing, Detective Zech confirmed that he was the individual who wrote the incorrect date on the memorandum of approval, and the date he should have written was March 7, 2017. *See* N.T. Suppression Hr'g at 21-22.

lot of the CI's hotel.[8]  Appellant's Brief at 30.  Appellant asserts that the police immediately retrieved two items from his vehicle (1) the plastic bag on the floor in the front of the passenger compartment; and (2) the safe in the rear of the passenger compartment.  *Id.* at 31-32.  To the extent the search could be justified as a search incident to arrest, Appellant argues that he "was outside of the vehicle, and handcuffed and otherwise detained."  *Id.* at 31.  Appellant maintains that "there was no danger that he could retrieve potential weapons or destroy evidence that may have been inside" the bag and safe, and the police should have obtained a warrant before retrieving these items.  *Id.* at 31.

Regarding the automobile exception to the warrant requirement, Appellant acknowledges that our Supreme Court's decision in ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014), establishes "that the current standard that applies in a case of search and seizure of an automobile and its occupants is the existence of probable cause."  Appellant's Brief at 33.  Appellant insists, however, that probable cause did not exist under the totality of the circumstances in this case, because "there was no information provided by the Commonwealth that the CI was reliable."  *Id.* at 34.  Appellant

---

[8] In his statement of questions presented, Appellant frames this issue as a challenge to both the search of his person and the search of his vehicle.  ***See*** Appellant's Brief at 4.  In the argument section, however, Appellant focuses only on the search of his vehicle.  *Id.* at 30-35.  Accordingly, we concentrate our analysis on the legality of the vehicle search.

concludes that the police illegally searched his vehicle, and the trial court erred when it denied his suppression motion. *Id.* at 35.

"The Fourth Amendment, by its text, has a strong preference for searches conducted pursuant to warrants." **Commonwealth v. Kemp**, 195 A.3d 269, 275 (Pa. Super. 2018) (citation omitted). In **Gary**, however, a majority of the Pennsylvania Supreme Court adopted the federal automobile exception to the warrant requirement:

> Therefore, we hold that, in this Commonwealth, the law governing warrantless searches of motor vehicles is coextensive with federal law under the Fourth Amendment. The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required. The consistent and firm requirement for probable cause is a strong and sufficient safeguard against illegal searches of motor vehicles, whose inherent mobility and the endless factual circumstances that such mobility engenders constitute a *per se* exigency allowing police officers to make the determination of probable cause in the first instance in the field.

**Gary**, 91 A.3d at 138.

"The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant." **Commonwealth v. Lechner**, 685 A.2d 1014, 1016 (Pa. Super. 1996) (citation omitted); **accord Gary**, 91 A.3d at 104. "Probable cause does not demand the certainty we associate with formal trials. Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be

found in a particular place." ***Commonwealth v. Manuel***, 194 A.3d 1076, 1081 (Pa. Super. 2018) (*en banc*) (citations omitted).

"An officer's determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner." ***Commonwealth v. Koonce***, 190 A.3d 1204, 1212 (Pa. Super. 2018) (citations omitted). "Information provided by a CI 'may constitute probable cause where police independently corroborate the tip, **or** where the informant has provided accurate information of criminal activity in the past, **or** where the informant himself participated in the criminal activity.'" ***Id.*** (citation omitted) (emphasis added).

Instantly, the trial court determined that probable cause existed to support the search at issue:

> Here, a CI told [Detective] Zech that [Appellant] was her drug dealer, and provided a physical description of [Appellant], his vehicle, as well as his girlfriend, who he commonly travels with. After providing consent to be intercepted and recorded, the CI called [Appellant] on his cell phone. [Detective] Zech was present during this call and learned that [Appellant] would be arriving at the CI's hotel room at the Econo Lodge in approximately 45 minutes. [Detective] Zech conducted a thorough search of the CI's hotel room with negative results. Next, the CI was outfitted with a covert audio recording device and provided buy money to use in the transaction. Subsequently, officers observed [Appellant] arrive in a black Jeep, exit the vehicle with a plastic bag, and enter the CI's hotel room. Inside the hotel room, [Appellant] sold the CI 25 bags of heroin. Following the transaction, the CI immediately met with [Detective] Zech and provided him with the heroin . . . .

Trial Ct. Op. at 14-15 (record citations omitted).

- 15 -

Under the totality of these circumstances, including the CI's participation in the criminal activity and subsequent statements to the police, probable cause existed to support the search of Appellant's vehicle. *See Manuel*, 194 A.3d at 1081; *Koonce*, 190 A.3d at 1212. Consequently, the police conducted a legal search pursuant to the automobile exception of the warrant requirement, and Appellant is not entitled to relief on his second claim. *See Gary*, 91 A.3d at 138.

In his third and fourth issues, Appellant reiterates his prior conclusion that the trial court should have granted his suppression motion, because the police failed to investigate "beyond what the CI provided and because of the illegal interception of audio from the device placed on the CI." Appellant's Brief at 37. "If this evidence is suppressed, Appellant argues that the guilty verdicts were against the weight of the evidence." *Id.* Appellant further argues:

> [N]one of the officers ever saw an exchange of drugs between him and the CI. [Appellant] contends that the verdicts were not supported by sufficient evidence. This is especially true since the intercepted conversations and the evidence derived from those conversations should be suppressed, as argued *supra*.

*Id.* at 40.

Additionally, Appellant refers to the lab report Ms. Force prepared in conjunction with the forensic testing of the controlled substances. *Id.* at 38. Appellant contends the report was fraught with errors, including (1) reliance on the "gross" weight of the packaging materials; (2) failure to extract cutting agents from the controlled substances; and (3) establishing a "threshold of

uncertainty [at] plus or minus .01 grams, yet . . . each bag tested weighed less than the measurement of uncertainty." *Id.* Appellant maintains that these errors, combined with "the Commonwealth's failure to introduce evidence . . . that the lab and testing equipment was properly certified," casts doubt upon "any testimony or evidence regarding whether an item contained a controlled substance . . . ." Based upon the foregoing, Appellant concludes that the Commonwealth presented insufficient evidence to support his convictions, and that the convictions are against the weight of the evidence. *Id.* at 39-40.

Instantly, to the extent Appellant's weight and sufficiency claims are based on his belief that trial court should have granted his suppression motion, we have already concluded that Appellant's suppression issues warrant no relief.[9] Regarding Appellant's allegations of errors associated with the lab report and testing of the controlled substances, Appellant failed to raise these specific arguments in his Rule 1925(b) statement, and they are now waived.[10]

---

[9] Although Appellant also contends that the police officers did not actually witness the drug transaction, we note that the CI testified at trial and confirmed that Appellant entered her hotel room on the day in question and provided heroin in exchange for the prerecorded buy money. *See* N.T. Trial, 11/27/17, at 30-31.

[10] Appellant's Rule 1925(b) statement presented his weight and sufficiency challenges as follows:

> Whether the verdicts on Count I: [PWID], 35 [P].S. § 780-113(a)(30), on Count II; [PWID], 35 [P].S. § 780-113(a)(30); on Count III: Delivery of a Controlled Substance, 35 [P].S. § 780-

*See Commonwealth v. Freeman*, 128 A.3d 1231, 1248-49 (Pa. Super. 2015) (holding that appellant waived his challenge to the weight of the evidence where his Rule 1925(b) statement, among other things, failed to offer specific reasons as to why the verdicts were against the weight of the evidence); *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (reiterating that an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient). Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

113(a)(30); on Count VI: Possession of a Controlled Substance, 35 [P].S. § 780-113(a)(16); on Count VII: Possession of a Controlled Substance, 35 [P].S. § 780-113(a)(16); on Count VIII: Drug Paraphernalia, 35 [P].S. § 780-113(a)(32); Count IX: Drug Paraphernalia, 35 [P].S. § 780-113(a)(32) and Count X: Criminal Use of a Communication Facility, 18 Pa.C.S.A. § 7512(a) were contrary to the weight of the evidence?

Whether the verdicts on Count I: [PWID], 35 [P].S. § 780-113(a)(30), on Count II; [PWID], 35 [P].S. § 780-113(a)(30); on Count III: Delivery of a Controlled Substance, 35 [P].S. § 780-113(a)(30); on Count VI: Possession of a Controlled Substance, 35 [P].S. § 780-113(a)(16); on Count VII: Possession of a Controlled Substance, 35 [P].S. § 780-113(a)(16); on Count VIII: Drug Paraphernalia, 35 [P].S. § 780-113(a)(32); Count IX: Drug Paraphernalia, 35 [P].S. § 780-113(a)(32) and Count X: Criminal Use of a Communication Facility, 18 Pa.C.S.A. § 7512(a) were supported by sufficient evidence?

Rule 1925(b) Statement, 8/6/18, at 2 (unpaginated).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/17/2019</u>